**In re the Marriage of Gloria Laine DAHLBERG, Petitioner, Respondent,**

v.

**Burton Francis DAHLBERG, Appellant.**

**No. CX–84–595.**

Court of Appeals of Minnesota.

Nov. 6, 1984.

Thomas G. Barry, Jr., Sween, Salazar & Barry, Minnetonka, for respondent.

Stuart L. Finney, Fuller & Finney, Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

This is an appeal from a judgment and decree of dissolution and from the trial court's order amending that decree and denying the appellant's post-trial motions for an amended order or a new trial. The appellant challenges the trial court's division of marital debts, distribution of nonmarital assets, award of maintenance, award of attorneys' fees, and refusal to indicate who should claim the parties' children as dependents for tax purposes. We affirm.

## FACTS

The parties were married in 1958 and have three children, two of whom are still minors. One of the children is retarded and resides at Mount Olivet Rolling Acres Home for the Retarded. The appellant, Burton Dahlberg, is employed at Kraus Anderson, Inc. as an executive vice president making approximately $92,500 per year plus bonuses which have ranged over the past fifteen years from $200 to $14,000. The respondent, Gloria Dahlberg, has been a traditional housewife. She is presently 49 years old and spends a substantial amount of time with her retarded daughter, both at Rolling Acres and when her daughter visits at home (about three days and nights every two weeks.) She has a high school degree, and prior to her marriage worked as a secretary, an assembler, an inspector and a switchboard operator. During her marriage she has made Christmas decorations and has sold them at consignment stores. The income from these sales is minimal.

After a trial of this dissolution proceeding, the court issued its findings of fact, conclusions of law and order for judgment, distributing the parties' property as follows:

## ASSETS

| Appellant | | Respondent | |
|---|---|---|---|
| Balmoral Lane property (townhome where the appellant resides—totally encumbered) | $ 00.00 | Homestead | $146,000.00 |
| Household goods and furniture in his possession and control | | Household goods and furniture in her possession and control | |
| Duluth property—no value established—nonmarital property. (Purchased by the appellant prior to the parties' marriage) | | 1983 Toyota Tercel—no value established | |
| Maui Hill Hawaii property—no value established. (Purchased for appellant's employer) | | | |
| Banyon Harbor, Hawaii Condominium | $14,650.00 | | |
| Wisconsin Farm Property | $25,000.00 | | |
| Promissory note (12% interest per annum) | $ 4,142.00 | | |
| Oil and Gas Limited Partnerships | $ 2,655.00 | | |
| Stock | $ 4,518.00 | | |
| Savings Account | $ 3,384.32 | Savings Account | $ 3,000.00 |
| One-half of IRA accounts | $ 4,557.50 | One-half of IRA accounts | $ 4,557.50 |
| TOTAL ASSETS | $58,906.82 | | $153,557.50 |

## LIABILITIES

| | | | |
|---|---|---|---|
| Coopers & Lybrand (for tax work) | $ 1,935.00 | | None |
| Letter of Credit (purchase of INCAP RESOURCES Oil and Gas Limited Partnership for income tax purposes) | $21,250.00 | | |
| Loan at American State Bank (for income tax purposes) | $15,725.00 | | |
| Loan at American State Bank (for income tax purposes) | $16,735.00 | | |
| TOTAL LIABILITIES: | $55,645.00 | | |
| NET: | $ 3,261.82 | | $153,557.50 |

The trial court included specific language in its findings of fact which indicated its reasons for the unequal distribution of assets:

In light of [appellant's] considerably greater resources, the length of the parties marriage and the [respondent's] employment situation, it is fair and equitable to award the [respondent] a disproportionate share of the parties marital assets.

The trial court also ordered the appellant to pay attorneys' fees in the amount of $5,000 to the respondent's attorney, and ordered child support of $625 per month and spousal maintenance of $1,300 per month for seven years. The court, finally, denied the appellant's request for language in the decree indicating that he could claim the children as dependents on his state and federal tax returns.

### ISSUES

Did the trial court abuse its discretion by:

1. holding the appellant solely liable for the parties' marital debts;

2. including non-marital assets in the property distribution;

3. awarding the respondent spousal maintenance for a period of seven years;

4. denying the appellant's request to claim the parties' minor children as dependents on his state and federal income tax returns; and

5. awarding $5,000 in attorneys' fees to the respondent?

### ANALYSIS

1. *Marital debts.*

When dividing property from a marriage, the trial court has broad discretion. *Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn.1981). Its decision will be affirmed if it has a "reasonable and acceptable basis in fact and principle." *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983). Where evidence supports the trial court's division, this court must affirm even if it would have reached a different conclusion in the first instance. *Posselt v. Posselt*, 271 Minn. 575, 576, 136 N.W.2d 659, 660–61 (1965).

The appellant argues that the trial court abused its discretion by holding him liable for all of the parties' marital debts. Appellant cites several of our decisions as authority for his contention that marital debts must be apportioned between the parties. *See Kreidler v. Kreidler*, 348 N.W.2d 780 (Minn.Ct.App.1984), *Lammi v. Lammi*, 348 N.W.2d 372 (Minn.Ct.App. 1984) and *Filkins v. Filkins*, 347 N.W.2d 526 (Minn.Ct.App.1984). Although the cited cases demonstrate that a court may, and in some instances, should apportion debts as well as property, nonetheless they continue to treat a trial court's division of debts in the same manner as its division of assets, indicating that courts should be "guided by equitable considerations in distributing rights *and liabilities*," and should have "broad discretion in the distribution." *Kreidler*, 348 N.W.2d at 784 (emphasis supplied).

In the present situation, as noted above, the trial court specifically found that the appellant has "considerably greater resources," and concluded that it was just and equitable to award the respondent a greater share of the assets. Likewise, by awarding the appellant all of the debts the court appears to have been guided by principles of fairness and equity. The appellant has a stable, high-paying job and the respondent has no job nor specialized skills. In addition, most of the debts appear to have been amassed by the appellant without consulting the respondent. The appellant's main objection appears to be that the trial court did not give him credit for paying off debts incurred solely by the respondent on charge accounts; however, none of the apportionment cases cited by the appellant indicate that a court must give a party credit for debts which he has voluntarily paid prior to trial. Finally, a party to a dissolution may be held liable for marital debts even though the other party receives the benefit of payment. (*See, e.g., Lammi*, 348 N.W.2d at 374, where the wife was awarded a tractor, although the husband remained liable on the debt for its purchase.)

## 2. *Non-marital property.*

The appellant also argues that the trial court abused its discretion by awarding him non-marital assets as part of the property division. The appellant alleges that the award to him of the Duluth property, Maui Hill property, and Glaxo and Republic stock reduced the amount of marital assets which he ought to have received.

### a) Duluth property

■ The trial court specifically found that the appellant purchased the Duluth property before the parties' marriage; therefore, that property must be considered non-marital, as the appellant alleges. Minn.Stat. § 518.54 subd. 5 (1982). However, the trial court did not divide this property or even assign a value to it, but simply distributed the property to the appellant. Because the trial court distributed to the appellant his own property and because there is nothing in the record or decree indicating that the Duluth property was awarded as an offset against marital property, the appellant's contention that the court erred by awarding him the property appears groundless. Even if it were determined that the trial court erred by awarding to the appellant his own non-marital property, such error would be harmless (assuming, of course, that the balance of the property were properly apportioned).

### b) Maui Hill property

The trial court also awarded to the appellant the Maui Hill property which is located in Hawaii. The appellant testified and the trial court found that this property was purchased by the appellant solely to accommodate his employer, and that the appellant will never have any equity position in this property. The court consequently gave the appellant the Maui Hill property, without assigning it a value. As with the Duluth property, because the court did not assign a value to the property, it appears that there was no intent to offset this property against that property awarded to the respondent.

### c) GLAXO Stock and Republic Stock

■ The trial court awarded the appellant GLAXO stock valued at $2,500.00 and Republic Airlines stock valued at $422.00. The appellant argues that this property was not available for distribution as marital property because this stock was purchased with money received by one of the parties' minor children in a personal injury settlement. The appellant himself testified, however, that the stock was "available to be distributed with all of the [parties'] other assets," and that the stock was in his son's name "only for tax purposes." This evidence supports the trial court's conclusion that the stock should be considered marital property.

## 3. *Maintenance.*

The trial court awarded the respondent maintenance of $1,300.00 per month for seven years. The appellant claims that this award is unreasonable in light of the recent trend by the courts towards emphasizing a spouse's ability to become financially independent. A court may award a spouse maintenance where that spouse:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1 (1982). The trial court should consider the following factors:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the spouse's age and skills, of completing education or training and becoming fully self-supporting;

(c) The standard of living established during the marriage;

(d) The duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance;

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(g) The contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker.

Minn.Stat. § 518.552, subd. 2 (1982).

■■■ The standard of review of a court's award of maintenance is "whether the trial court abused the wide discretion accorded to it." *Smoot v. Smoot*, 329 N.W.2d 829, 831 (Minn.1983). "[E]ach case must be determined on its own facts." *Erlandson v. Erlandson*, 318 N.W.2d 36, 39 (Minn.1982). No single factor is dispositive, and "although the statute lists seven factors, the issue is basically the financial needs of [a spouse] and her ability to meet those needs balanced against the financial condition of [the other spouse]." *Id.*, at 39–40.

■■■ In the present case the evidence at trial demonstrated that the respondent is 49 years old and has not been employed in the normal work force since her marriage to the appellant. Her only contribution to the parties' income has been derived from making Christmas decorations, which have in the past generated approximately $1,350.00, less costs for materials. Expert testimony indicated that it will take at least 2–4 years for her to re-enter the work force, and that her income at that time will probably be low.

In addition, the trial court countered its somewhat substantial award of maintenance and property to the respondent with a decrease in the amount of child support awarded. *See* Minn.Stat. § 518.552 subd. 2(a) (1982), which lists the amount of child support as a factor to be considered when awarding maintenance.

In light of the above facts, the trial court's award of maintenance for seven years was not unreasonable or an abuse of discretion.

### 4. *Tax issue.*

■■■ The appellant argues that the trial court abused its discretion by not indicating specifically that he may claim the parties' minor children as dependents for federal and state tax purposes. It is unclear why the appellant feels that a court in a dissolution action must indicate who may claim minor children as dependents. As the appellant himself notes, federal and state statutes both provide guidance on this issue. In addition, it is unlikely that a state court order allowing the appellant to claim his children would be of any effect, were the IRS to determine that the respondent should claim them. Finally, the cases which the appellant cites are inapposite. It is within a court's discretion to consider the tax consequences of its actions. *DuBois v. DuBois*, 335 N.W.2d 503 (Minn.1983), *Johnson v. Johnson*, 277 N.W.2d 208 (Minn. 1979), and *Druck v. Druck*, 258 Minn. 114, 103 N.W.2d 123 (1960). Nowhere do those decisions state that a court must determine whether a party meets the qualifications of a tax law and that he may claim under that law.

5. *Attorneys fees.*

The appellant finally claims that the record does not establish an adequate basis for the court's award of $5,000.00 in attorneys' fees to the respondent's attorney. The appellant claims that there was no evidence of the reasonableness of the fees or the amount of the work performed.

Contrary to the appellant's contentions, the court file does contain an itemized list of the respondent's attorney's charges for legal services rendered. In addition, the court had an opportunity to observe the dissolution proceedings and to examine the files, record, depositions, and documents submitted by the parties' attorneys. This court has stated:

> In Minnesota, in awarding attorney's fees, there must be "a determination of reasonable value based upon proof thereof or the court's observation of the services performed."

*Moberg v. Moberg,* 350 N.W.2d 421, 424 (Minn.Ct.App.1984), (quoting *Larson-Roberts Electric Co. v. Burdick,* 267 Minn. 486, 489, 127 N.W.2d 163, 165 (1964)).

The appellant suggests that that respondent's resources are ample to cover the costs of attorneys' fees. However, as indicated above, the respondent only received the homestead, a car, household goods, a savings account containing $3,000.00, one-half of an IRA and maintenance of $1,300.00 per month. The record of her attorney's costs and expenses indicates obligations well in excess of $8,000.00.

The scope of review of a court's award of attorneys' fees is whether there was a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 611 (Minn.1977); *Solon v. Solon,* 255 N.W.2d 395, 397 (Minn. 1977). There was no such abuse in this instance.

**DECISION**

The trial court's determinations are in all respects affirmed.