In re the Marriage of Julie Marie
CARLSON, Petitioner,
Respondent,

v.

Brian Thomas CARLSON, Appellant.

Nos. C7–85–2377, CO–86–397.

Court of Appeals of Minnesota.

July 1, 1986.

Review Denied Aug. 20, 1986.

Lawrence M. Baill, Wasserman, Silberman & Baill, Minneapolis, for respondent.

Robert L. Bach, Mary J. Atmore, Felhaber, Larson, Fenlon & Vogt, P.A., St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

Appeal is made from numerous trial court orders and an amended judgment and decree dissolving the parties' marriage. Appellant mainly claims the trial court abused its discretion in (1) disproportionately dividing the parties' marital property and (2) failing to recuse itself following out-of-court conversations with appellant's former counsel. We affirm in part, reverse in part and remand.

## FACTS

Appellant Brian Thomas Carlson and respondent Julie Marie Carlson were married in 1967. They have two children; the first born on October 9, 1967 and the second born on September 14, 1971. The parties initially separated in November 1981 and permanently separated in January 1982.

Respondent petitioned for dissolution in February 1984. In an order for temporary relief filed May 9, 1984, the first trial court ordered joint legal custody with temporary and exclusive care in respondent. Appellant was ordered to pay $800 per month in child support and $1000 per month in spousal maintenance. An order filed July 19, 1984 granted joint legal custody, made support and maintenance awards, and awarded respondent $5000 in attorney fees. In September 1984, both children began residing in appellant's custody.

On February 7, 1985, the trial court ordered sale of the parties' duplex on Nicollet Avenue in Minneapolis. Proceeds were to be used to pay the child support and attorney fees awarded in July 1984. Two weeks thereafter, appellant moved for removal of the involved referee from all further matters. On June 7, 1985, the first trial court, although it had already rendered pre-trial decisions, acquiesced in appellant's further request that it step down.

Trial was held in June 1985 before the second trial court. Alan C. Eidsness represented appellant until shortly before trial. After he withdrew, appellant, an attorney, appeared pro se.

The second trial court's order for judgment and decree dated August 1, 1985 was filed August 5, 1985. Judgment was also filed August 5. Appellant was awarded physical custody of the children without respondent's objection. Joint legal custody was ordered.

By order dated August 9, 1985, filed August 14, 1985, the trial court *sua sponte* amended its August 5 judgment to correct typographical and other errors. The original order had awarded respondent a full $1000 per month annuity appellant had received as counsel in settlement of a lawsuit brought under his representation. That provision was amended to give appellant $300 per month and respondent $700 per month.

The property division was amended:

| | Respondent | | Appellant | |
|---|---|---|---|---|
| Total assets | | $241,361.50 | | $227,676.50 |
| Total liability | | $ 34,027.00 | | $120,102.00 |
| Net | | $207,334.50 | | $107,574.50 |

Appellant sent respondent notice of filing of both the August 5 order and judgment and the August 14 order on August 14, 1985. By motion filed August 21, 1985, appellant moved for a new trial. The motion was "brought upon the affidavit or affidavits annexed, upon the entire file, records and proceedings herein." Appellant's 35–point affidavit was attached. Appellant subsequently submitted a memorandum alleging 51 trial court errors.

On September 10, 1985, appellant said he obtained knowledge of alleged misconduct by the trial court. The second trial court and appellant's former counsel Eidsness were alleged to have met on several occasions during and after the involved trial and discussed appellant and his case. Appellant moved for recusal and vacation of judgment on September 23, 1985.

Appellant's recusal motion was denied by trial court order dated December 1, 1985 and filed December 5, 1985. The court found it had disclosed to the parties prior to trial its relationship with Eidsness as formerly working at the same law firm and meeting regularly to discuss legal issues and common interests. Both parties were asked prior to trial if they objected. Neither party did. The trial court found appellant had failed to show any prejudice from the alleged misconduct. The court noted appellant had benefitted from the August 14 *sua sponte* order which followed alleged misconduct. The trial court also found the motion to be untimely, citing *Gummow v. Gummow*, 375 N.W.2d 30 (Minn.Ct.App. 1985); Minn.Stat. § 542.16; Minn.R.Civ.P. 63.03; and Minn.R.Civ.P. 59.03.

Appellant's new trial motion was denied by trial court order dated and filed December 2, 1985. The court found many of the 51 alleged errors had been fully litigated and ruled upon and the remainder had not constituted grounds for a new trial under Minn.R.Civ.P. 59.01. The December 2 order did adjust the property distribution to reflect a net division of $206,966.50 to respondent and $141,971.50 to appellant.

On December 30, 1985, the trial court's amended judgment and decree was entered incorporating all changes since the original August 5 judgment and decree.

By notice of appeal filed December 30, 1985 (C7–85–2377), appellant challenges the December 2 order denying a new trial and directing entry of amended judgment, and the December 5 order denying recusal. By notice of appeal filed March 7, 1986 (C0–86–397), appellant challenges the December 30 amended judgment, the August 5 order for judgment and the August 14 order for amended findings. The court of appeals by its order of March 17, 1986, consolidated these appeals.

## ISSUES

1. Is this appeal proper?

2. Did the trial court abuse its discretion in dividing the parties' property?

3. Did the trial court abuse its discretion in not recusing itself?

## ANALYSIS

1. Respondent claims appellant improperly filed his brief pursuant to Minn.R.Civ. App.P. 131.01 (appellant's brief shall be filed within 30 days after delivery of transcript). Respondent argues this court's March 17 order was inconsistent in its calculation of the due date. Respondent fails to note February is a short month and is apparently unaware of Minn.R.Civ.P. 6.01 regarding computation. *See* Minn.R.Civ. App.P. 126.01. Appellant's brief was timely.

2. Respondent claims this court is without jurisdiction to hear appellant's issues because appeal is made from nonappealable orders and from an amended judgment which precludes consideration of issues not amended.

■ Respondent claims appellant greatly limited his issues for review by appealing from the amended judgment. Review here is limited only to that part of the original judgment and decree altered by the amended judgment. *Compare Swartwoudt v. Swartwoudt*, 349 N.W.2d 600 (Minn.Ct. App.1984) (review limited when time to ap-

peal from original judgment has passed), *pet. for rev. denied* (Minn. Sept. 12, 1984) *with Kelly v. Kelly,* 371 N.W.2d 193 (Minn. 1985) (appeal treated as though made from the original judgment as well when time to appeal from that judgment had not yet expired). The amended judgment altered property distribution. All issues related to the division of property will be reviewed.

■ Respondent claims review cannot be made of the order denying recusal. That order is nonappealable because it neither finally determines the action nor finally determines some positive legal right. *See* Minn.R.Civ.App.P. 103.03(e). But on appeal from the amended judgment, the order is reviewable as affecting the subsequent amended judgment. *See* Minn.R.Civ. App.P. 103.04.

■ Respondent argues denial of a new trial is not appealable when the involved motion did not comply with Minn.R.Civ.P. 59.01. The basis of a new trial motion must be stated explicitly and with specificity. Failure to do so will render the post-decree motion nonappealable. *See Swartwoudt,* 349 N.W.2d at 602. Appellant's memorandum alleging 51 trial court errors was improperly served on respondent just prior to the motion hearing. Persuasive materials are to be served with the notice of motion. *See* Minn.R.Civ.P. 59.04. Appellant's memorandum is a procedurally inappropriate manner to state grounds for a new trial and he is limited to review of those grounds stated in his affidavit. We also note our dismay with the practice of shotgunning alleged errors in a new trial motion. Such procedure is counterproductive.

■ Finally, appellant's challenge of the August 5 and August 14 orders on March 7, 1986 is well beyond 30 days from the August 14 notice of filing. *See* Minn.R. Civ.App.P. 104.01. Both constitute orders for judgment which are inherently nonappealable. *See id.* 103.03 comment. Neither is within the court's scope of review. *See id.* 103.04.

3. Appellant claims the trial court abused its discretion in its division of the parties' marital property and debts and in its award of spousal maintenance.

It is axiomatic that in dissolution cases the trial court is accorded a broad discretion with respect to the award of maintenance and division of property. In *Bollenbach v. Bollenbach,* 285 Minn. 418, 175 N.W.2d 148 (1970), the supreme court stated:

> This court, when called upon to review the exercise of trial court discretion in a case such as this, *will and must* affirm the decision of the trial court if it has *an acceptable basis in fact and principle* even though we might have reached a different disposition of the problem.

*Id.* at 426–27, 175 N.W.2d at 154 (emphasis added) (footnote omitted). The supreme court recently reaffirmed the *Bollenbach* rule in *Rohling v. Rohling,* 379 N.W.2d 519 (Minn.1986).

*Kenville v. Kenville,* 385 N.W.2d 398, 400 (Minn.Ct.App.1986).

Appellant makes several challenges to the trial court's factual and principled bases. First, he claims the trial court's reliance on lack of spousal maintenance was inappropriate and led to a disproportionate award.

In its memorandum accompanying the judgment and the amended judgment, the trial court stated:

> For the reasons stated below, the equities favor awarding the annuity to petitioner in lieu of spousal maintenance and as her disproportionate property award.

But in its amended judgment the trial court did award rehabilitative maintenance, concluding:

> Respondent shall pay to petitioner the sum of $600.00 per month as and for rehabilitative spousal maintenance commencing August 15, 1985. Said spousal maintenance shall be payable in two equal installments on the first and fifteenth days of each month. Spousal maintenance shall continue until petitioner's death, remarriage, or petitioner be-

gins to receive the monthly annuity payments from Manufacturers Life Insurance Company pursuant to paragraph 12 hereof.

Appellant argues the trial court obviously contradicts itself and the basis for its disproportionate award does not exist. He also asserts even in the absence of a maintenance award, the trial court's reliance on its absence would be error given legislative amendment to Minn.Stat. § 518.58. *See* 1982 Minn.Laws ch. 464, § 2 (deleting "whether the property award is in lieu of or in addition to maintenance or support" as a basis for division of marital property).

We agree respondent was clearly awarded maintenance in the amended judgment, whether in form of $600 per month or in actual annuity payment, and as such cannot be a legitimate basis for a disproportionate award.

Respondent argues the division of marital assets is not disproportionate, is close to an equal distribution, and is in appellant's favor. The amended judgment awarded respondent $214,966.50 and appellant $254,071.50. Respondent asserts appellant's complaint is actually regarding the division of marital debt awarded substantially in respondent's favor.

■ We approved a disproportionate assignment of marital debt in *Dahlberg v. Dahlberg*, 358 N.W.2d 76 (Minn.Ct.App. 1984). The *Dahlberg* court assigned all the parties' marital debt to the husband based on his considerably greater resources and earning potential. The record supports similarity between *Dahlberg* and the instant case. Here, appellant has practiced law since 1972. Respondent has been a housewife and earned part time income by sewing. She has a high school education. Appellant attempts unsuccessfully to attribute the disparity between their earning potential to respondent's lack of assertiveness.

Although the trial court erred in its reliance on spousal maintenance to determine the fairness of property division, an equitable basis exists to support a disproportionate distribution of marital debt. The ultimate distribution of both assets and debt cannot be evaluated solely on these two circumstances, but must be determined in relation to other salient factors.

4. Appellant also claims the trial court improperly pierced the corporate veil of his law practice, Brian T. Carlson, P.A., because no finding of alter ego was made. He asserts the trial court wrongfully treated the annuity as property of the parties when income was actually assigned to the corporation.

■ Respondent argues the annuity was earned by appellant prior to incorporation and appellant is the actual owner of the annuity. The corporation had assigned the full annuity to appellant's bank to pay his personal indebtedness. The trial court found it inappropriate to distinguish appellant's personal and corporate assets where he himself had not respected the separate identity. We agree and conclude the corporate veil was properly pierced.

5. Appellant claims the trial court improperly failed to consider the tax consequences of the property division.

Although it is entirely proper for the trial court to consider the tax consequences of its award as one of the many factors pertinent to an equitable division of property, tax considerations are not controlling. The trial court did not err by failing to adjust the award to accommodate for taxes, especially where no evidence on the issue was presented at trial or in a proposal submitted to the trial court prior to its decision.

*Johnson v. Johnson*, 277 N.W.2d 208, 213 (Minn.1979) (citation omitted). Appellant claims he was not afforded opportunity at trial to present evidence because he received no notice regarding the corporate veil issue.

■ Tax consequences are an essential consideration here. We remand for the purpose of determining such consequences and in relation thereto determination whether the division of the annuity is proper.

6. Appellant claims the trial court improperly valued the Carver County farm. Expert testimony was presented on both sides. Appellant asserts the court should have considered the depressed farm economy and used a market value approach rather than a cost analysis.

While we have often stated that trial courts are accorded broad discretion in both the valuation and distribution of an asset, exercise of that discretion is not unlimited and should be supported by either clear documentary or testimonial evidence or by comprehensive findings issued by the court.

*Ronnkvist v. Ronnkvist,* 331 N.W.2d 764, 766 (Minn.1983).

■■■ The trial court erred in stating valuation had to be based on separate analysis of the farm property and the farm buildings. The trial court should not have limited appraisal methods, but should have considered another appraisal which valued the farm property and buildings together. The trial court also erred in not noticing the depressed rural real estate market. The average sales price per acre dropped 17% between 1982 and 1985 in the metro area, including Carver County, and 43% in adjoining counties. Dion & Raup, *The Minnesota Rural Real Estate Market in 1985,* Minnesota Agricultural Economist (Jan.1986). We remand for proper valuation and appropriate adjustment in distribution.

7. Appellant claims the trial court erred in refusing to allow him to call his former counsel Eidsness as a witness. Appellant and the trial court differ as to their recollection of the trial court's pre-trial statements. The trial court stated it said it would recuse itself if Eidsness were called, not that Eidsness could not be called. Any conflict which existed between Eidsness and the trial court no longer exists because the trial court no longer sits. Eidsness can testify on remand regarding property division if his testimony is relevant.

■■■ 8. Appellant claims the trial court should have recused itself because it engaged in ex parte communications. Denying appellant's post-trial recusal motion was within the trial court's discretion. *See State v. Pierson,* 368 N.W.2d 427, 432 (Minn.Ct.App.1985). The order should not be reversed absent clear abuse of that discretion.

Appellant alleges the trial court conversed with his former attorney during trial and once after trial and initiated discussion about the case and about appellant.

Judges, of course, should be sensitive to the "appearance of impropriety" and should take measures to assure that litigants have no cause to think their case is not being fairly judged. Nevertheless, a judge who feels able to preside fairly over the proceedings should not be required to step down upon allegations of a party which themselves may be unfair or which simply indicate dissatisfaction with the possible outcome of the litigation.

*McClelland v. McClelland,* 359 N.W.2d 7, 11 (Minn.1984) (citation omitted).

After a litigant has once disqualified a presiding judge as a matter of right under subdivision 1, he may disqualify the substitute judge, but only by making an *affirmative showing of prejudice.* A showing that the judge might be excluded for bias from acting as a juror in the matter constitutes an affirmative showing of prejudice. If a litigant makes an affirmative showing of prejudice against a substitute judge, the chief judge of the judicial district shall assign any other judge of any court within the district to hear the cause.

Minn.Stat. § 542.16, subd. 2 (1984) (emphasis added); *see* Minn.R.Civ.P. 63.03. Although appellant's right to disqualify the first trial court expired after the court was involved in pre-trial decisions, that court nonetheless acquiesced in appellant's request. His post-trial recusal motion failed to cite any prejudice from the alleged misconduct of the second trial court. In his brief, he admits he can never know in what manner the second trial court may have been influenced by its contact with his former counsel. He also states neither party

was privy to the conversations and thereby accents the manner in which he has stretched the definition of "ex parte" communications.

■ Appellant also challenges the trial court's finding his recusal motion was untimely and claims his rights were sacrificed on the "altar of technicality." Because appellant has failed to demonstrate prejudice, we need not reach the timeliness issue.

■ We do disagree with the trial court's practice of not placing the pre-trial discussion on the record. Any conversation involving the propriety of the trial court's decision to sit and any involved disclosures should be on the record. This practice must be followed especially when an alleged waiver of removal by counsel occurs. Review cannot be made when we are left only hindsight recollection of past conversations. Judicial integrity is served by keeping such a record.

### DECISION

The trial court erred in its division of marital property. We remand for proper distribution based on correct valuation of farm real estate and equitable distribution of the involved annuity with consideration to resultant tax consequences. The trial court did not clearly abuse its discretion in failing to recuse itself given a lack of demonstrated prejudice.

Affirmed in part, reversed in part and remanded.