**In re the Marriage of Richard C. HAASKEN, Petitioner, Appellant,**

**v.**

**Linda S. HAASKEN, Respondent.**

**No. C2-86-496.**

Court of Appeals of Minnesota.

Nov. 18, 1986.

John P. Guzik, Lawrence D. Olson & Associates, Roseville, for appellant.

Loren Gross, Christian and Gross, Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

This is an appeal from a dissolution judgment and an order amending the judgment but denying appellant's motion for a new trial. Appellant, Richard Haasken, argues that the trial court's delay in entering the original judgment and its ex parte communications during that delay warrant a new trial. He also claims that the trial court abused its discretion by granting custody of the children to respondent; by setting the amount and duration of spousal maintenance; by making him responsible for all the tax liability on the sale of marital stock; by valuing a lake lot and by invading his nonmarital assets. Respondent filed a notice of review and argues that she was entitled to permanent spousal maintenance and that appellant's yearly bonuses should have been included as income in setting child support. She further contends that the trial court abused its discretion in limiting what schools the children attend; in setting the terms of visitation; in dividing dividends and interest and in denying her attorney's fees. We affirm.

## FACTS

Appellant and respondent were married in October, 1972. They separated in March, 1984, and a dissolution hearing was held in February and March of 1985. A dissolution decree was entered on December 24, 1985. At the time of the dissolution hearing, appellant was forty-one years old and respondent was thirty-eight. They had three children, ages five, one-and-a-half years and four months.

Both parties sought custody of the three children. Appellant was concerned about respondent's disciplinary skills claiming she had left bruises on their oldest daughter when spanking her. Appellant also testified that respondent's religious beliefs had intensified over the last four years and that this had affected her parenting. In particular, he strongly objected to the church school respondent wanted their five-year-old daughter to attend. Appellant claimed

the school facility was a "pole barn," and that there were sixty to sixty-five students and three teachers for grades kindergarten through twelve. He stated the curriculum was concentrated on religious education and did not offer all the courses necessary for state certification.

Respondent testified that she had sought help from a psychologist to improve her parenting skills. She stated that she only wanted to send their daughter to the church school because she thought it would offer the child extra attention and assurance during the parties' divorce proceedings.

The custody evaluator testified that the children interacted equally with both parties. She noted it would be an adjustment for the children to relocate and live with appellant, particularly for the baby who was still nursing. The evaluator testified that in her interview with the parties' five-year-old daughter, she said she liked both parents but wanted to live with respondent. The evaluator recommended that it would be in the children's best interests if respondent were granted custody of the children.

The trial court granted sole legal and physical custody of the children to respondent, finding that she was the primary parent during the marriage and that she was a fit person to have custody. Appellant was granted liberal and reasonable visitation including the right to a daily twenty minute phone call with the children. The trial court also required that the children be placed in public school unless the parties can agree otherwise.

Appellant was ordered to pay child support of $1,100.00 per month. The trial court found that he also had the ability to earn bonuses in his current position but that the bonuses were not a guaranteed income source. The bonuses were not included in appellant's net income for the determination of child support.

The trial court recognized the disparity in the parties' earning capacities. At the time of the hearing, appellant was employed as manager of a discount retail store with a gross yearly income of approx-imately $64,400. Respondent's employment history consisted primarily of clerical and retail sales positions, but she had not been employed outside of the home since 1976. The trial court noted that respondent was the custodian of three small children and that her reentry into the work force would most likely be delayed until the children could care for themselves. The trial court ordered appellant to pay respondent spousal maintenance in the sum of $600 a month until the youngest child enters first grade; appellant is then to pay $400 per month for two years and then $200 per month for two years. The spousal maintenance was characterized as temporary for the purpose of respondent's retraining or further education.

In dividing the parties' property, the trial court emphasized that it attempted to make an equitable, not an equal, property division. Respondent received marital assets worth approximately $74,414. Her total property award was $112,250.50, which included appellant's nonmarital interest in the homestead worth $37,835.19.

Appellant received all interest in the parties' lakeshore property, which the trial court found to have a market value of $38,000 with a current equity of $23,703.90. When combined with other assets granted to him, appellant's share of marital property totaled approximately $92,566. At the time of the dissolution hearing both parties presented expert testimony on the value of the lakeshore property. Respondent's expert valued the land at $38,000 while appellant valued the land at $19,500. Appellant acknowledged that the lakeshore property had special personal value to him because his father owned the adjacent lot. Additional marital property awarded in its entirety to appellant consisted of over 1400 shares of Dayton-Hudson Corporation stock, 629 of which are part of a company stock purchase plan on a tax-deferred basis.

## ISSUES

1. Did the trial court's delay in issuing its original judgment and its communica-

tion with a visitation mediator during that time require a new trial?

2. Was the trial court's judgment regarding custody and visitation an abuse of its discretion?

3. Did the trial court abuse its discretion by granting respondent temporary spousal maintenance?

4. Did the trial court abuse its discretion in its valuation of property?

5. Did the trial court abuse its discretion in its division of marital and nonmarital property?

6. Did the trial court err by not including appellant's potential bonuses as income when setting child support?

7. Did the trial court err by not awarding respondent attorney's fees?

## ANALYSIS

### I.

### DELAYED JUDGMENT

■ The decree in this case was entered almost ten months after the dissolution hearing. The trial court explained that it delayed entering the decree in an effort to diffuse some of the animosity between the parties over the visitation issue. The trial court had hoped to employ the mediation process to reach a solution to the visitation problem that would be acceptable to all parties involved. Unfortunately, as the trial court acknowledged, this approach failed.

Minn.Stat. § 546.27 (1984) states that, "all motions and matters submitted to a judge for a decision * * * shall be disposed of and the decision filed with the clerk within 90 days * * *." *Id.* In *Wenger v. Wenger,* 200 Minn. 436, 274 N.W. 517 (1937) the supreme court noted that the statute does not provide any consequences for a failure to comply and that the language is directory and not mandatory. *Id.* at 440, 274 N.W. at 519.

Respondent claims that the trial court's delay in this case was prejudicial because the value of certain stock awarded to appel-

lant had increased in value by approximately $6,000 between the time of the hearing and the time judgment was entered. Respondent argues this asset should have been revalued at the time the judgment was entered.

In *Otte v. Otte,* 368 N.W.2d 293 (Minn.Ct. App.1985) this court stated:

Generally marital estates are valued at the time of the trial. * * * Where the value of an asset has changed substantially between the time of trial and appeal, however, a court should consider the effect of that change on the fairness of the property division.

*Id.* at 299 n. 1. *See also Johnson v. Johnson,* 277 N.W.2d 208, 212 (Minn.1979). The trial court in the present case properly valued the property at the time of the trial. It states in its amended findings:

[T]he Court recognized that valuations were taken at the time of the trial and tried to make allowances for that in the division of the property.

Further, the stock's value increased by approximately $6,000. In light of the substantial assets awarded to each party, this increase does not give appellant such a disproportionate share of the marital assets to warrant a redistribution. *See Webb v. Webb,* 360 N.W.2d 647, 649 (Minn.Ct.App. 1985).

Appellant contends that the delay was prejudicial because it affected the trial court's recall of facts. Appellant does not, however, cite any specific examples of this alleged impairment. Also, our independent review of the record did not yield any support for appellant's allegations. Further, this was not an instance where the file was set aside by the trial court and remained inactive for several months. The court was involved actively in attempting to ameliorate destructive visitation conflict. In the future the trial court may wish to decide all issues promptly and provide in the decree for a review hearing or evaluation update on visitation. However, here the trial court's well-intentioned delay, without a showing of prejudice, cannot be considered error.

■ Appellant also claims he was prejudiced by communications between the trial court and the visitation mediator assigned to his case. Appellant does not specify what information influenced the trial court to his detriment. Neither does appellant suggest that respondent nor her counsel were privy to these communications. The trial court itself stated:

[I] * * * asked Court Services to give me their recommendations on visitation which they did. And which I did not fully adopt.

* * * * * *

[T]he recommendations on visitation, * * * as I recall, were more favorable to [appellant] than the ones that I adopted.

The circumstances and content of the trial court's communication do not evidence an "ex parte" communication or any prejudice that warrants a new trial. *See Carlson v. Carlson,* 390 N.W.2d 780, 785–86 (Minn.Ct.App.), *pet. for rev. denied,* (Minn. Aug. 20, 1986).

## II.

### CUSTODY AND VISITATION

■ Appellant argues that the trial court abused its discretion in granting custody of the parties' children to respondent. Under *Pikula v. Pikula,* 374 N.W.2d 705 (Minn. 1985), when a child is "too young to express a preference for a particular parent and one parent has been the primary caretaker, custody [is] awarded to the primary caretaker absent a showing that that parent is unfit to be the custodian." *Id.* at 713. Appellant does not challenge the trial court's finding that respondent is the primary parent. He does, however, challenge the trial court's finding that respondent is fit to be the custodian.

The parties presented the trial court with voluminous and conflicting testimony about their parenting abilities. In addition, the trial court had the benefit of expert testimony to assist it in arriving at its decision. In these instances, the trial court is considered in the best position to judge the credibility of witnesses. This court will not second guess such determinations. *Benson v. Webb,* 356 N.W.2d 352, 356 (Minn.Ct. App.1984).

Respondent argues that the trial court abused its discretion when it limited her custodial control regarding the children's education. A custodial parent is usually given sole responsibility for decisions on health, education and religion unless the trial court determines:

that failure to limit the custodial parent's authority will endanger the children's health or development.

*Chapman v. Chapman,* 352 N.W.2d 437, 441 (Minn.Ct.App.1984) (citing *Auge v. Auge,* 334 N.W.2d 393, 397 (Minn.1983)).

In its amended findings, the trial court stated:

The Court finds that it is in the best interests of the children to minimize the impact of the parties' conflict by requiring the children to attend public schools unless the parties can agree otherwise. The [appellant] has expressed valid concern about the placement of the children in schools which may not be certified by the State and [in] which the educational programs may be lacking. The Court further finds that without such a limitation, the children's physical or emotional health and emotional development shall be endangered or impaired.

The trial court's infringement on respondent's custodial powers is substantial. There was, however, testimony presented at the hearing that raised serious doubts about the quality of respondent's educational decisions. In light of these concerns, we cannot say the trial court's limitations on respondent's educational decisions were an abuse of its discretion.

■ Respondent also claims that the trial court abused its discretion when it set the visitation schedule to require appellant be allowed a daily telephone conversation with the children. Trial courts have extensive discretion in deciding visitation schedules. *Manthei v. Manthei,* 268 N.W.2d 45, 45 (Minn.1978). Respondent has not set forth any facts to show that the phone calls

are not in the best interests of the children or that they pose a special harm to them. *See* Minn. Stat. § 518.175, subd. 1. Without such a showing we will not disturb the trial court's visitation schedule.

## III.

### SPOUSAL MAINTENANCE

Both parties seek review of the maintenance award. Appellant claims it was far too generous and respondent claims that she should have been awarded permanent spousal maintenance.

■ A trial court has wide discretion in determining spousal maintenance and its determination is final unless the court abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). The trial court's determination is examined in light of the factors set forth in Minn. Stat. § 518.552 (1984). Under this section, the trial court is to "balance the financial needs of the spouse seeking maintenance and his or her ability to meet those needs against the financial condition of the spouse providing the maintenance. Particular attention is given to periods of training or education." *Griepp v. Griepp*, 381 N.W.2d 865, 869 (Minn.Ct.App.1986). We believe that both the amount of maintenance and its duration reflect careful observance of the "balancing" that must be conducted by the trial court.

■ Respondent claims that the trial court erred by not applying the 1985 amendment to Minn.Stat. § 518.552 which according to respondent favors her argument for permanent maintenance. The trial court did not specify what law it applied. However, under either the policy enunciated before or after the 1985 amendment to section 518.552, we conclude that the circumstances of this case do not justify an award of permanent spousal maintenance. The trial court's findings show it carefully considered respondent's abilities, her present parental responsibilities and the need for training or education to make a successful reentry into the job market and

structured its grant of temporary maintenance in the context of these factors.

Appellant argues that the maintenance should have been for a maximum of three years, and emphasizes the fact that respondent has made no attempt to seek employment or start retraining since their separation. We note that since the parties' separation respondent has had the job of caring for three children under the age of six years. Under such circumstances it is difficult to find fault with respondent's conduct. The trial court recognized the full-time demands of raising three small children and structured its award of maintenance accordingly. The trial court's grant of temporary maintenance until the youngest child enters first grade was well within its discretion and virtually insures that at that time respondent will be seeking employment outside the home whether she has completed retraining or not.

## IV.

### PROPERTY VALUATION

■ Appellant argues that the trial court abused its discretion in its valuation of the lake property and that the trial court should have required an independent valuation. Trial courts are accorded broad discretion in the valuation of assets. The valuation should, however, be "supported by either clear documentary or testimonial evidence or by comprehensive findings issued by the court." *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn. 1983). Valuations of assets need not be exact if they are within a reasonable range of figures. *Johnson v. Johnson*, 277 N.W.2d at 211. Assigning a specific value is a finding of fact that will not be set aside unless clearly erroneous. *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975).

The trial court adopted the valuation given by respondent's expert of $38,000. Respondent's expert witness based his valuation on numerous factors including the amount of lakeshore frontage, comparable sales in the vicinity and the amount of

buildable land due to the rising water level of the lake. The trial court's valuation coincided with this expert's valuation and was not clearly erroneous.

## V.

### DIVISION OF PROPERTY

Respondent claims that she has been denied "dividends and interest" earned on assets awarded to her. She does not, however, specify to what assets she refers or what amounts were earned. Based on this scant information it is impossible for this court to conduct any meaningful review of the issue. Further, the trial court's findings show it was cognizant of the fact that appellant received the interest from some assets eventually awarded to respondent and compensated for this in the property division.

Appellant claims there was a stipulation that the parties would share equally in the tax liability on the sale of some of their stock. The trial court in its amended findings made appellant liable for the entire tax debt, if any. The trial court specifically found:

[Appellant] requests the Court to consider the tax consequences of the stock division. Yet at neither trial nor the motion did he present the Court with evidence of the actual tax consequences. The Court declines to engage in such speculation.

■ Upon review of the record we can find no evidence of a stipulation as to division of the tax liability. The trial court stated repeatedly that it intended to make an equitable, not an equal division and noted appellant's substantially greater earning potential. In light of these circumstances, the trial court's apportionment of future tax liability to appellant was not an abuse of its discretion. *See Carlson v. Carlson*, 390 N.W.2d at 784. Further, the trial court's refusal to divide the tax liability without specific evidence about the amount of that liability was clearly within its discretion. *See Johnson v. Johnson*, 277 N.W.2d at 213.

■ Appellant also argues that the trial court erred by invading his nonmarital interest in the homestead when making the property division. Under Minn.Stat. § 518.58 (1984) nonmarital property may be divided upon a showing of unfair hardship to a spouse due to inadequate resources. The trial court in the present case made no finding of unfair hardship.

It did note in its amended findings, however, that "Given the relative property division, the Court did indeed compensate [appellant] for the invasion into the nonmarital portion of the homestead." The trial court's findings also show its awareness of the animosity between the parties and their difficulty in mutually resolving issues. Further, the trial court recognized the disparity in the parties' earning capacities and emphasized that its property division was equitable, not equal.

An examination of the trial court's property division shows that appellant was awarded a substantially greater portion of the marital assets. Also, the property division was structured so that the parties do not have shared interests in various assets. Rather, the division appears to have recognized the needs and priorities of each party and granted to each the assets that would be most beneficial. The property granted to appellant included the sports car, the pick-up truck, the lakeshore property situated adjacent to property owned by his father, and stock in his employer's company. Respondent received the homestead. The trial court recognized appellant's nonmarital interest in the homestead and made allowance in its overall property division. Any alternative property division—equal or equitable—would inevitably have required that respondent be awarded some interest in the lakeshore property or Dayton-Hudson stock, both of which were more appropriately awarded to appellant, and that both parties would have had an interest (marital, nonmarital, or both) in the homestead, very probably requiring that appellant forebear enjoyment of that interest, at least for the immediate future. We conclude that the trial court's division of the

parties' marital and nonmarital property did not constitute an abuse of its discretion. *See Kelly v. Kelly*, 371 N.W.2d 193, 197 (Minn.1985); *Riley v. Riley*, 369 N.W.2d 40, 43 (Minn.Ct.App.1985).

## VI.

### CHILD SUPPORT

 Respondent argues that in the past appellant has received an annual bonus from his employer and that this bonus should have been included in appellant's net income to determine the amount of child support. Both parties agree that this amount differs every year and depends on several variables. The trial court found that the bonuses were not a guaranteed income source and did not include them when setting the amount of child support.

Minn.Stat. § 518.54, subd. 6 (1984) defines income as "any form of periodic payment to an individual * * *." To properly be included in a calculation of net monthly income the payments need to be "the type of income which could or should provide a dependable source of child support." *Stangel v. Stangel*, 366 N.W.2d 747, 749 (Minn.Ct.App.1985). The record in the present case shows that while the bonuses are payments to appellant, they may or may not be paid every year depending on the store's profitability. In the past the amount of the bonus has varied from $0 to $9,000. Based on these facts, the trial court's conclusion that the bonuses did not constitute income for purposes of child support was not clearly erroneous.

## VII.

### ATTORNEY'S FEES

Respondent claims the trial court erred in not awarding her attorney's fees. Minnesota courts are committed to a "conservative policy with respect to the allowance of attorney fees in divorce actions." *Eizenhoefer v. Eizenhoefer*, 292 Minn. 442, 443, 193 N.W.2d 628, 629 (1972). The allowance of such fees lies almost entirely within the trial court's discretion. *Solon v. Solon*, 255 N.W.2d 395, 397 (Minn.1977).

The trial court's refusal to grant attorney's fees in this case was not an abuse of that discretion. Respondent's monthly expenses as presented to the trial court included an allocation for attorney's fees. Further, there was no showing of such a significant financial disparity between these parties that would mandate appellant to absorb these costs.

## DECISION

The trial court's delay in issuing the judgment and decree does not warrant a new trial. The trial court did not err in its determination of child custody, visitation, spousal maintenance, property valuation, property division, child support or attorney's fees.

Affirmed.