*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1517**

In re the Marriage of:

Shima Shojaee Falavarjani, petitioner,
Appellant,

vs.

Navid Tabrizi,
Respondent.

**Filed May 6, 2024**
**Affirmed**
**Reilly, Judge**[*]

Dakota County District Court
File No. 19AV-FA-20-2113

Kathryn M. Lammers, Carlo E. Faccini, Heimerl & Lammers, LLC, Minneapolis, Minnesota (for appellant)

Mary L. Hahn, Britt Ackerman, Hvistendahl, Moersch, Dorsey & Hahn, P.A., Northfield, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Smith, Tracy M., Judge; and

Reilly, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REILLY**, Judge

On appeal from judgment dissolving the parties' marriage, appellant argues that the district court should not have (1) omitted respondent's bonuses when calculating income for purposes of child support and maintenance, and (2) treated appellant's "dowry" of certain gold coins as marital property. Because we discern no error with the determination that respondent's bonuses were not sufficiently dependable periodic payments to include as income, or that the equitable division of marital property included the gold coins, we conclude the district court acted within its discretion and affirm.

## FACTS

Appellant Shima Shojaee Falavarjani and respondent Navid Tabrizi met in Iran and were married on May 14, 2010, in Salt Lake City, Utah. Six months later, they held a religious ceremony in Iran.

In November 2020, Falavarjani petitioned a Minnesota district court for dissolution of marriage, requesting joint legal and sole physical custody of the parties' three minor children. The parties stipulated to joint legal and joint physical custody in July 2022. The district court held a trial later that year on the outstanding issues involved in the dissolution proceeding, including the division of assets and the calculation of spousal maintenance and child support.

The district court entered a judgment dissolving the parties' marriage on January 27, 2023, pursuant to Minn. Stat. § 518.06 (2022). Because of a clerical error, the district court amended its findings a few days later on February 3, 2023. Tabrizi worked at Sleep

Number Corporation in the United States throughout the duration of the marriage, while Falavarjani worked as the primary caregiver for the children. In the February 2023 amended findings, the district court determined that Tabrizi's income and the corresponding parental income available for child support (PICS) was $13,856 per month. Shortly before separating, Tabrizi's income increased—he received annual bonuses because of Sleep Number's rising profits during the COVID-19 pandemic. But the district court did not include Tabrizi's bonuses in its income calculation because the district court found that the bonuses were unlikely to continue "due to the slowdown of consumer purchasing." Falavarjani was awarded temporary spousal maintenance totaling $4,000 per month through January 1, 2027. The district court determined that Tabrizi's child-support obligation, a 100% share of the PICS, was $1,662 per month.

The district court also found that Falavarjani had ten gold coins in her possession that were "given to [the couple] during the marriage ceremony held in Iran." The district court determined that it had jurisdiction over the ten gold coins as part of the dissolution proceeding. As marital property, the district court divided the coins equally between Falavarjani and Tabrizi.

The parties moved to amend the district court's amended findings. In an August 2023 order, the district court granted Tabrizi's motion to amend its calculation of the PICS because it failed to include Falavarjani's potential income and her income from spousal maintenance. The PICS was amended to $15,233, with Falavarjani carrying a 35% share and Tabrizi 65%. But the district court denied Falavarjani's motions to include Tabrizi's bonuses in its income calculation, and to reconsider division of the gold coins. Based on

3

the revised PICS, the district court determined that Tabrizi owed child support totaling $1,251 per month ($1,161 after subtracting Falavarjani's own medical support obligation of $90). Falavarjani appeals.

**DECISION**

Falavarjani argues the district court erred by (1) excluding Tabrizi's bonuses in its income calculation, and (2) distributing the ten gold coins as marital property. "In dissolution cases, the district court has broad discretion regarding the division of property, spousal maintenance and child support." *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009).

## I.    Income

Falavarjani first argues the district court erred in calculating Tabrizi's income because the trial evidence "illustrate[s] a past regular history of bonus income being received and fail[s] to indicate that bonus income would cease."

"A court's determination of income must be based in fact and will stand unless clearly erroneous." *Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn. App. 2015) (quotation omitted), *rev. denied* (Minn. Dec. 15, 2015); *see In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 222-23 (Minn. 2021) (outlining clear-error standard); *Bayer v. Bayer*, 979 N.W.2d 507, 513 (Minn. App. 2022) (citing *Kenney* in a family-law appeal). But whether a source of funds is considered income is a question of law reviewed de novo. *Sherburne Cnty. Soc. Servs. ex rel. Schafer v. Riedle*, 481 N.W.2d 111, 112 (Minn. App. 1992).

"[G]ross income includes any form of periodic payment to an individual. . . ." Minn. Stat. § 518A.29(a) (2022). "[B]onuses are forms of periodic payment and therefore

4

income." *Novak v. Novak*, 406 N.W.2d 64, 68 (Minn. App. 1987), *rev. denied* (Minn. July 22, 1987). Bonuses may be included as income if the district court finds that the bonus is "the type of income which could or should provide a dependable source of child support." *Haasken v. Haasken*, 396 N.W.2d 253, 261 (Minn. App. 1986) (quotation omitted).

The district court determined that Tabrizi's bonuses were not sufficiently regular and dependable "periodic payment[s]" under Minn. Stat. § 518A.29(a). This conclusion is supported by the record. In the 16 years Tabrizi worked for Sleep Number, bonuses were "very rare[]." Because of the pandemic, Sleep Number's business boomed, leading to large annual bonuses for its employees like Tabrizi. But bonuses were based on Sleep Number's profitability, not necessarily Tabrizi's performance as an employee. Tabrizi testified that "due to supply chain constraints" and "stock go[ing] down," Sleep Number was not forecasting such high bonuses in the future.

Falavarjani argues the district court should have determined the bonuses were dependable sources of income because Tabrizi received bonuses over a four-year period. But Falavarjani fails to point to evidence documenting these bonuses, and our review of the record indicates there is documentation of "Annual Incentive" bonuses on Tabrizi's paystubs for just two years—2020 and 2021. Partial documentation of two years of bonuses, with no evidence the bonuses would continue, does not amount to the repetitive certainty required to impute income. On this record we thus discern no error with the district court's conclusion that Tabrizi's bonuses were not a sufficiently dependable source of income to be included in his gross income for purposes of calculating child support and spousal maintenance. *See Haasken*, 396 N.W.2d at 261.

5

## II.    Division of Gold Coins as Marital Property

To begin, Falavarjani asserts the district court lacked the authority to apportion ten gold coins as part of the marriage dissolution. The district court concluded it "appropriately retained jurisdiction over the gold coins." Falavarjani thus appears to challenge the district court's jurisdiction finding, although she articulates it as an issue of the court's authority. *See Moore v. Moore*, 734 N.W.2d 285, 287 n.1 (Minn. App. 2007), *rev. denied* (Minn. Sept. 18, 2007). Minnesota courts clearly have subject-matter jurisdiction over, and the authority to divide property in, a marriage dissolution proceeding. Minn. Stat. § 518.58, subds. 1, 2 (2022) ("Upon a dissolution of marriage . . . the court shall make a just and equitable division of the marital property of the parties. . . ."). And, in her petition for dissolution, Falavarjani requested the district court apportion the parties' marital assets.

After concluding it had authority over the parties' assets involved in the dissolution proceeding, the district court determined the gold coins were marital property and divided them equally between Falavarjani and Tabrizi. On appeal, Falavarjani essentially argues that the gold coins are not a marital asset, but her dowry, a nonmarital property asset, and that the district court's division of the property was inequitable.

This court reviews de novo whether property is marital or nonmarital, but it defers to the district court's underlying findings of fact. *Baker v. Baker*, 753 N.W.2d 644, 649 (Minn. 2008). If a district court's findings are clearly erroneous, this court may "set the findings aside." *Gill v. Gill*, 919 N.W.2d 297, 301 (Minn. 2018); *see Kenney*, 963 N.W.2d at 222-23. When parties to a dissolution challenge the district court's division of their

6

marital property, appellate courts review that division for an abuse of discretion. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002).

The nature of a married couple's property is often a matter of timing. *Gill*, 919 N.W.2d at 303. Marital property generally includes property acquired during a marriage, while nonmarital property includes property acquired before marriage. Minn. Stat. § 518.003, subd. 3b (2022) (defining "marital property" and "nonmarital property"). Falavarjani and Tabrizi were married in Utah in May 2010, around six months before their marriage ceremony in Iran. It is undisputed the gold coins were acquired as part of the Iranian ceremony, and *after* the two were legally married in the United States. Thus, the gold coins are presumptively marital property. *See* Minn. Stat. § 518.003, subd. 3b.

Falavarjani asserts the gold coins are an Iranian dowry and therefore her nonmarital property. Tabrizi testified that the coins were wedding gifts given to the couple jointly as an investment to support their family. If, as Falavarjani asserts, Tabrizi gave her the gold coins as part of an Iranian dowry or gift,[1] then they could be her nonmarital property. *See id.* ("'Nonmarital property' means property . . . acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse. . . ."). A valid gift requires the donor intend to make a gift, that the gifted property be delivered, and that the donor absolutely dispose of that property. *Olsen v. Olsen*, 562 N.W.2d 797, 800 (Minn. 1997). Falavarjani carried the burden of rebutting the presumption that the gold coins were

---

[1] There was no expert testimony on Iranian marriage ceremonies, but we note generally based on the parties' collective testimony that an Iranian "dowry" is not something produced by the bride's family, but a gift provided by the husband or husband's family to his future wife, intended to put the parties in more equal bargaining positions.

marital property and proving the elements of a valid gift by clear and convincing evidence. *See id.*; Minn. Stat. § 518.003, subd. 3b ("The presumption of marital property is overcome by a showing that the property is nonmarital property.").

Falavarjani failed to put forth any evidence that the gold coins were a gift to her or are otherwise her nonmarital property. *See id.* Tabrizi provided a spreadsheet of the gifts received, denoting the gold coins as collective wedding gifts. Falavarjani did not provide any alternate evidence. Neither party introduced evidence of the actual value of the gold coins.[2] For that reason, the district court's findings of fact are not clearly erroneous, and, absent donative intent or an actual accounting of the coins' value, the district court did not otherwise err when it ruled that the ten gold coins are marital property. *See* Minn. Stat. § 518.58, subd. 1. We also conclude that the district court acted within its discretion when it divided the gold coins, as marital property, equally and equitably.

**Affirmed.**

---

[2] The parties also presented conflicting testimony about whether Falavarjani sold a few of the gold coins during the marriage. The district court found Tabrizi's testimony more credible, and this court defers to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).