**In re the Marriage of Mabel M. ROHLING, Petitioner, Appellant,**

v.

**Carl B. ROHLING, Respondent.**

**No. C9-84-1060.**

Supreme Court of Minnesota.

Jan. 3, 1986.

Thomas A. Jansen, St. Cloud, for appellant.

James W. Hoolihan, St. Cloud, for respondent.

SCOTT, Justice.

Mabel Rohling seeks further review of a Minnesota Court of Appeals decision that reversed the district court's distribution of marital property under Minn.Stat. § 518.58 (1984). The court of appeals held that it was an abuse of discretion for the district court to distribute, as marital property, two retirement funds received by her husband, Carl Rohling, during the separation of the parties. The appeals court also reversed the district court's determination that Mabel need not pay Carl's equitable lien on the homestead for 15 years. We reverse the court of appeals.

Carl and Mabel Rohling were married on October 14, 1946, in St. Cloud. Throughout most of their marriage Mabel was a full-time homemaker and mother to the parties' seven children, and Carl was employed as a

printer.[1] On September 27, 1974, Mabel commenced an action for dissolution of her marriage to Carl and filed an application for temporary maintenance and child support. Pursuant to Mabel's petition, the county court of Stearns County, on October 17, 1974, ordered Carl to pay $300 a month for the temporary support of the two minor children of the marriage. The court awarded temporary possession of the homestead to Mabel, but denied her application for any temporary maintenance. Thereafter, Mabel and Carl attempted a reconciliation. Their attempt at reconciling failed, however, and on May 23, 1975, Mabel filed an amended petition requesting that she receive permanent custody of the minor children and reasonable maintenance and child support. Modifying its earlier order, the county court, on June 19, 1975, reduced the temporary child support to $200 per month and required Carl to pay one-half of each of the monthly mortgage payments, the real estate taxes, and the insurance premiums on the house. Mabel was denied temporary maintenance, but retained temporary possession of the homestead.

From 1975 to 1983, neither Carl nor Mabel, although remaining separated, sought to have a final dissolution decree ordered by the court.[2] During this period of separation the printing company for which Carl worked merged with another printing firm and Carl received $11,358.33, in 1979, and $6,938.56, in 1980, as part of his former employer's retirement plan.

The proceedings for a final dissolution decree commenced on February 8, 1984, before the Seventh Judicial District Court. At the hearing it was established that Carl had failed to pay, in violation of the county court's 1975 temporary order, $3,100 in child support, $901.71 in house payments, $2,021.28 in real estate taxes, and $672.50 in insurance premiums on the house. The court reduced Carl's share of the marital property by the total of these debts to Mabel.

In determining each party's share of the marital assets, the court included, as marital property, the money Carl received under his former employer's retirement plan.[3] The court concluded that the funds were earned during the marriage and were spent entirely by Carl, without Mabel's knowledge.

The court awarded Carl his automobile, the value of his current retirement plan and the money he received under his former employer's retirement plan. Mabel received her automobile, the value of her current retirement plan, the homestead and the personal property therein. Mabel's title to the house, however, was subject to an equitable lien in favor of Carl in the sum of $6,601—the approximate amount of Carl's share of the marital property that was unsatisfied. The court denied Mabel's request for maintenance, concluding that it was "unnecessary" because Mabel would be able to live in the homestead and would not be burdened by a mortgage.

Carl appealed, contending that the district court erred in labeling his 1979 and 1980 retirement distributions as marital assets and in allowing Mabel to retain the homestead without having to pay the equitable lien until April 16, 1999. Mabel also appealed, arguing that the district court erred in denying her request for

1. Until she petitioned for dissolution in 1974, Mabel had been employed outside the home for only two short periods. At the time of her marriage to Carl in 1946, she was employed as a telephone operator; however, when she became pregnant in early 1947, she was forced to give up her position. Shortly before she and Carl separated in 1970, Mabel began working part-time as an aide at a nearby elementary school.

2. Carl and Mabel did attempt another reconciliation in 1980. Carl lived in the homestead from February to September of that year. He continued to rent an apartment, however, and returned to it when reconciliation was not achieved.

3. The court determined that the following assets were marital property to be divided by the court:

| | |
|---|---:|
| Carl's 1979 retirement distribution | $11,358.33 |
| Carl's 1980 retirement distribution | 6,938.56 |
| Carl's current retirement plan | 9,143.10 |
| Homestead | 58,500.00 |
| Carl's automobile | 6,000.00 |
| Mabel's automobile | 500.00 |
| Mabel's current retirement plan | 1,000.00 |
| | $93,439.99 |

maintenance. The court of appeals reversed, stating that the district court abused its discretion when it included the two retirement funds in the marital property distribution and when it ruled that Carl's equitable lien need not be paid off before April 16, 1999. The court did not discuss the denial of Mabel's request for maintenance. *Rohling v. Rohling*, 363 N.W.2d 62 (Minn.App.1985). Mabel seeks further review by this court.

The following issues are presented:

(1) Was it an abuse of discretion for the district court to include in the marital property distribution retirement funds received by the husband after the commencement of a dissolution proceeding and during separation?

(2) Was it an abuse of discretion for the district court, in placing an equitable lien on the homestead, to hold that it need not be paid for 15 years?

(3) Was it an abuse of discretion for the district court to deny maintenance under Minn.Stat. § 518.552?

1. The court of appeals held that the district court abused its discretion when it considered the retirement funds received by Carl in 1979 and 1980 marital property, to be divided pursuant to Minn.Stat. § 518.-58 (1984). The Minnesota Statutes define marital property as:

> property, real or personal, including vested pension benefits or rights, acquired by the parties, or either of them, to a dissolution, legal separation, or annulment proceeding at any time during the existence of the marriage relation between them * * *.

Minn.Stat. § 518.54, subd. 5 (1984).

The retirement funds in question fall within this definition of marital property. Carl acquired the right to receive the funds under the plan during the period in which he was employed by Lenarz Printing, a period that ended in 1981 when Lenarz Printing merged with another printing company. The marriage between Carl and Mabel was not dissolved until May 14, 1984. Therefore, the money Carl received from his former employer was "property

* * * acquired by the parties, or either one of them, * * * at any time during the existence of the marriage." *Id.; see Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn.1979) (property acquired by a married couple or by either of them after the marriage dissolution petition is filed is subject to disposition by the trial court in a property division).

Although the retirement funds were dissipated at the time the district court divided the marital property (Carl had spent the $18,296.89 he received from his former employer) the statute necessarily defines marital property as that which was *acquired* during the marriage. Thus, the property need not necessarily be "present" at the time of dissolution. *See Bollenbach v. Bollenbach*, 285 Minn. 418, 428, 175 N.W.2d 148, 155 (1970) (discussing the dissipation of marital property).

In reviewing distributions of marital property under Minn.Stat. § 518.58, we have given great deference to the trial court's determination. In *Bollenbach*, 285 Minn. at 426–27, 175 N.W.2d at 154, we established the rule for reviewing property distributions, by stating:

> This court, when called upon to review the exercise of trial court discretion in a case such as this, will and must affirm the decision made if it has an acceptable basis in fact and principle even though we might have made a different disposition of the problem.

*See also Castonguay v. Castonguay*, 306 N.W.2d 143, 147 (Minn.1981) (affirming the *Bollenbach* rule). Moreover, the legislature has afforded trial courts considerable discretion to divide the marital assets between the parties. Minn.Stat. § 518.58 allows a court to "make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property." Because the retirement funds in this case so clearly fall within the definition of marital property, we conclude that there is no abuse of discre-

tion. The district court's determination has "an acceptable basis in fact and principle." *Bollenbach*, 285 Minn. at 426–27, 175 N.W.2d at 154.

■ 2. The district court awarded Mabel the homestead subject to an equitable lien in favor of Carl, payable on or before April 16, 1999. The court ruled that if Mabel were to remarry, sell the house, or cohabit with a member of the opposite sex, she would have to pay off the lien, and if Mabel were to die before April 16, 1999, the lien would be payable upon her death.

The court of appeals held that this lien arrangement was an abuse of discretion because the district court effectively denied Carl the receipt of the proceeds of his lien until the end of his life expectancy (Carl would be 75 years old in 1999). The court remanded this issue to the district court to calculate a more "proper length of time" for the lien to remain on the house. In so doing, the court of appeals violated the mandate in *Bollenbach*, which requires a reviewing court to affirm a property distribution that has an "acceptable basis in fact and principle."

The district court's lien arrangement has such a basis. In considering the possible property distributions in this case, the district court stated:

> The Court strongly believes that Petitioner should be allowed to remain in the homestead unencumbered by either a second mortgage or the necessity of a forced sale. Considering Petitioner's age and income, either of the foregoing would constitute an undue hardship. Other alternatives could have included the granting of Petitioner maintenance sufficient to maintain payments on a second mortgage or to grant Petitioner lifetime occupation of the homestead pursuant to Minn.Stat. 518.63. Either alternative would have resulted in a more com-

plex legal relationship between the parties and would not afford Respondent a more favorable result.

Because courts have considerable discretion in arranging property distributions in marital dissolution cases, the district court's concern that other homestead arrangements would result in a more complex relationship between the parties must be respected. *See Castonguay*, 306 N.W.2d at 147; *Bollenbach*, 285 Minn. at 426–27, 175 N.W.2d at 154. Moreover, in granting Mabel 15 years in which she would not be forced to pay off the equitable lien, the district court also considered the disparity of income between the parties.[4] The consideration of such a factor is within the discretion of the court.[5]

■ 3. The district court denied Mabel's request for permanent maintenance, concluding that it was "unnecessary" because Mabel would have the right, for 15 years, to occupy the homestead without any encumbrances. The court of appeals did not reach the issue of whether this denial was an abuse of discretion. The statutory provision that the district court applied provides, in part:

> In a proceeding for dissolution of marriage or legal separation, * * * the court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance:
>
> (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and
>
> (b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

4. In 1984, Mabel's monthly net income was $755. For the same year, Carl's monthly net income was $1,217.

5. Minn.Stat. 518.58 (1984) provides:
   The court shall base its findings [regarding the division of the property] on all relevant

factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party.

Minn.Stat. § 518.552, subd. 1 (1984).[6]

Upon balance, the district court did not abuse its discretion in denying permanent maintenance to Mabel. Although Mabel has only an eighth-grade education, and for most of the marriage was a full-time homemaker and mother, she has, since she first petitioned for dissolution in 1974, been employed at a local hospital as an aide. At the time of the dissolution proceeding in 1984, she was earning a monthly net salary of $755. She had at that time accrued retirement benefits of $1,000. The facts thus suggest that, under Minn.Stat. § 518.-552, subd. 1(b), Mabel is able to support herself "adequately." At the time of the proceeding she was 60 years old, and thus could be expected to retire at the age of 65.

Under the district court's property distribution, Mabel received her automobile (worth $500), her retirement benefits (worth approximately $1,000), all personal property located at the homestead (value not established during the proceedings) and the homestead (appraised at $58,500), subject to a $6,601 equitable lien in favor of Carl. It is obvious that there was almost a complete lack of financial liquidity. In these circumstances, it was not an abuse of discretion for the district court to also determine that Mabel received "sufficient" property to provide for her "reasonable needs" under Minn.Stat. § 518.552, subd. 1(a).

Although this court might have reached a different conclusion regarding maintenance, *Bollenbach* dictates that the reviewing court affirm in such cases, as long as the decision of the trial court has an "acceptable basis in fact and principle." The district court's denial of maintenance in this case had such a basis.

We therefore reverse the court of appeals, and reinstate the decision of the district court.

Reversed.

PETERSON, J., took no part in the consideration or decision of this case.

6. This statute was amended in 1985. *See* Act of May 31, 1985, ch. 266, § 2, 1985 Minn.Laws