**In re the Marriage of Krystyna SMOLECKI, Petitioner, Respondent,**

**v.**

**Chester SMOLECKI, a.k.a. Czeslaw Smolecki, Appellant.**

**No. C8–85–1819.**

Court of Appeals of Minnesota.

May 20, 1986.

Review Denied July 16, 1986.

Errol K. Kantor, Leslie A. Gelhar, Minneapolis, for respondent.

Chester Smolecki, Czeslaw Smolecki, pro se.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

Appellant Chester Smolecki disputes the finding that the homestead was marital property, the property division, and the awarding of attorney's fees to respondent. We affirm.

## FACTS

Chester and Krystyna Smolecki were married on September 17, 1966 in Minneapolis, Minnesota. Chester Smolecki, appellant, was 52 years of age, and respondent 41 at the time of the dissolution. Both parties are Polish immigrants who came to this country in the 1960's. They have two children.

Krystyna earns approximately $1,600 a month from two jobs, one at Abbey Medical and the other as a cleaning woman. Her necessary monthly living expenses are $1,841.93.

Chester was trained in Poland as a master journeyman in glass blowing. He has worked a variety of jobs since emigrating to the United States. However, he is seriously disabled and has been unable to work since June 2, 1982 as a result of work-related lung problems and a right hip replacement. He receives a $505 monthly social security disability payment.

The parties were owners in joint tenancy of a homestead in Minneapolis. The trial court determined its fair market value to be $55,000 and awarded Krystyna all right, title, and interest in the family homestead. Chester claims the trial court abused its discretion in awarding Krystyna the homestead, in which he held a partial nonmarital interest. He claims that he should receive title to the house when his youngest child reaches 18 years of age.

A major point of contention at trial concerned approximately $45,000 which Chester removed from Minnesota in violation of the court's restraining order and took with him to Poland. The Polish government arrested Chester when he attempted to leave Poland with the funds. He spent several months in a Polish jail. Chester is presently seeking return of the money through legal channels. The trial court ordered that Chester shall receive any and all funds returned by the government of Poland.[1]

The trial court awarded Krystyna a total of $64,700.44 in marital assets and ordered her to pay $4,625.67 to Chester, leaving her with a net property settlement of $60,074.77. The court awarded Chester a total of $55,449.09 in marital assets which, when combined with the $4,625.67 payment from Krystyna, leaves him with a net property settlement of $60,074.76. The marital assets awarded to Chester, however, include the $45,000[2] currently in the hands of the Polish government.

In addition, the trial court ordered Chester to pay child support of $90.90 a month and awarded custody of the children to Krystyna, with visitation rights to Chester. The court also issued a restraining order against Chester due to previous incidents of domestic violence. The court ordered Chester to pay Krystyna $3,000 in attorney's fees.

## ISSUES

1. Did the trial court err in determining that the entire equity in the homestead property is marital property?

2. Did the trial court err in its division of property and valuation of assets?

3. Did the trial court err in awarding respondent $3,000 in attorney's fees?

## ANALYSIS

1. *The homestead as marital property.*

■ Minnesota Statutes section 518.54, subd. 5 (1984) creates the presumption that property acquired during marriage is marital property regardless of whether title is

---

1. It appears the maximum amount Chester will recover is $34,980. A mailgram from the U.S. State Department advised that the Polish court had awarded him the return of $34,980; however, this verdict is being appealed by the Polish prosecutor, and the verdict must be affirmed on appeal before the funds will be returned to Chester.

It appears that Chester took the money to Poland because he feared that Krystyna would close out all the parties' bank accounts, as he alleges she did previously when she commenced a divorce action. There is no indication that he intended to secrete the money in Poland; he was arrested with the money when he was on his way out.

2. Some of the funds were spent on living expenses and other expenditures while Chester was in Poland prior to his arrest.

held individually or in co-ownership. This presumption may be overcome by establishing the nonmarital character of the contributions. The trial court found that Chester failed to meet this burden and held that the homestead property is marital property. We agree.

Our standard of review is quite narrow. The decision of the trial court regarding the nature of marital property will be overturned only for a clear abuse of discretion. *Novick v. Novick*, 366 N.W.2d 330, 332 (Minn.Ct.App.1985).

At trial, both parties gave conflicting testimony as to the source of funds used to purchase the homestead. Chester failed to produce evidence supporting his claim that the house was purchased by a savings bond gift, the sale of some gold, and a $3,000 gift from an uncle. The trial court found Krystyna's testimony more credible. She substantiated her position that the homestead constituted marital property through the presentation of her tax returns and financial records.

2. *Division and valuation of property.*

■ Minnesota Statutes section 518.58 (1984) governs the division of marital property. It provides that "the court shall make a just and equitable division of the marital property" under standards enunciated in section 518.18.

The standard of review regarding the division and valuation of property is narrow. *Hertz v. Hertz*, 304 Minn. 144, 229 N.W.2d 42 (1975). The *Hertz* court explained:

> Assigning a specific value to an asset is a finding of fact; disputes as to asset valuation are to be addressed to the trier of fact, and conflicts are to be resolved in that court. Such findings of fact, when made without a jury, shall not be set aside unless clearly erroneous on the record as a whole.

*Id.* at 145, 229 N.W.2d at 44 (citations omitted).

The trial court's decision will stand "except for a clear abuse of discretion." *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn.

1977). The lower court will be affirmed "if it has an acceptable basis in fact and principle even though we might have made a different disposition of the problem." *Rohling v. Rohling*, 379 N.W.2d 519, 522 (Minn.1986) (quoting *Bollenbach v. Bollenbach*, 285 Minn. 418, 426–27, 175 N.W.2d 148, 154 (1970)).

We are persuaded that the trial court made a just and equitable distribution of property. The court considered Chester's and Krystyna's income potential and opportunity for future acquisition of capital assets. *See Nolan v. Nolan*, 354 N.W.2d 509, 512 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Dec. 20, 1984). The court determined that Chester is in poor health and has a low income-producing capacity. Further, it remains uncertain whether the government of Poland will return any of his money. Krystyna, in contrast, is in good health and earns almost three times more than Chester. The division also represents the court's determination of the hardships and necessities relevant to the parties. Therefore, the trial court did not err in dividing the parties' property and in ordering Krystyna to pay a property settlement of $4,625.67 to Chester.

We also emphasize that the trial court properly determined that Chester is clearly entitled to receive any and all funds returned by the government of Poland. There is no need to report to the trial court the final resolution and disposition of the funds. To interfere would unjustly deprive Chester of his primary source of financial support and subvert the equity of the property settlement.

■ Finally, we affirm the trial court's valuation of the homestead at $55,000. Krystyna's evidence was uncontradicted by Chester and the trial court's "valuation is necessarily an approximation in many cases, and it is only necessary that the value arrived at lies within a reasonable range of figures." *Hertz*, 304 Minn. at 145, 229 N.W.2d at 44.

### 3. *Attorney's fees.*

■ The trial court awarded Krystyna $3,000 in attorney's fees.

The awarding of attorney's fees is a decision within the "discretion of the trial court and normally will not be disturbed unless there is a clear abuse of discretion." *Borchert v. Borchert,* 279 Minn. 16, 21, 154 N.W.2d 902, 906 (1967). Moreover, the court may justify its decision due to a party's use of dilatory tactics, attempts to hide assets, and noncooperation with the court and counsel. *Quade v. Quade,* 367 N.W.2d 87 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 11, 1985).

In the present case, the trial court found that Krystyna had incurred fees and costs exceeding $5,000. The court stated that:

The majority of these fees and costs [had] been incurred as a direct consequence of respondent's misconduct and disregard for orders of this court, including respondent's intentional concealment and disposal of substantial assets, which conduct necessitated contempt motions and other motions for appropriate relief, prolonged and complicated discovery.

In light of these factors, the decision of the trial court to award $3,000 in attorney's fees was not an abuse of discretion. *See Bollenbach v. Bollenbach,* 285 Minn. 418, 440, 175 N.W.2d 148, 162 (1970).

### DECISION

The division and valuation of the parties' property and the award of attorney's fees were within the discretion of the trial court and were not clearly erroneous.

Affirmed.