**In re the Marriage of Loretta June JOHNSON, Petitioner, Respondent,**

v.

**Norman Manford JOHNSON, Appellant,**

**No. C3–86–331.**

Court of Appeals of Minnesota.

Sept. 16, 1986.

Richard J. Krambeer, Henningson, Peterson & Associates, Inc., Minneapolis, for respondent.

Ellen Dresselhuis, Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and PARKER and RANDALL, JJ.

## OPINION

PARKER, Judge.

This is a marital dissolution case involving a controversy over whether or not an $80,000 fund existed and whether it was secreted and diverted from the marital estate by Norman Johnson. Questions are also raised of valuation of a vendor's interest in a contract for deed for a fourplex, valuation of a duplex owned by the parties and the question of substantial attorney's fees awarded by the trial court sitting without a jury.

Norman Johnson appeals from the dissolution judgment and decree, contending the trial court abused its discretion by (1) finding that $80,000 in cash was kept in a hiding hole in the basement and that Norman Johnson secreted those funds; (2) the use of a discounted value on the vendor's interest in a contract for deed on the fourplex; (3) valuing Norman Johnson's duplex at $72,000; and (4) awarding $16,000 in attorney's fees to respondent Loretta Johnson.

The trial court found that Norman Johnson had secreted and diverted the $80,000 and that his actions had increased the cost of litigation, therefore justifying the amount of attorney's fees awarded. The trial court also accepted a discounted value for the vendor's interest in the contract for deed on the fourplex, based on the present value of the contract, and found that Norman Johnson's recent work on the duplex justified a higher valuation of the duplex than that agreed upon by the parties in the settlement negotiations. We affirm.

## FACTS

Loretta Johnson, now age 62, and Norman Johnson, now age 65, were married in 1944. They have three children, all of whom are past the age of majority.

Loretta Johnson is currently employed part-time as a clerk at Butler Drug in Minneapolis, with a net income of approximately $85 per week ($340 per month). She also receives rental income of $375 per month from a duplex at 110 West 27th Street, Minneapolis. She will be entitled to $237 per month in social security benefits when she becomes eligible.

Norman Johnson has been retired since 1973. He receives $419 per month in social security benefits and rental income of $350 per month from a duplex at 2624–26 Blaisdell Avenue South in Minneapolis. In 1985 he had income from part-time employment with Gamet Manufacturing Company, but that employment has ceased.

The parties own three rental properties: a duplex at 110 West 27th Street in Minneapolis, which was the parties' homestead, one of the apartments of which Loretta Johnson now occupies; a duplex at 2624–26 Blaisdell Avenue South in Minneapolis, one of the apartments of which Norman Johnson now occupies; and the vendor's interest in a contract for deed (dated February 1, 1985) on a fourplex at 2630 Blaisdell Avenue South in Minneapolis.

The dispute over the existence of the $80,000 led to a two-part evidentiary hearing before a referee (August 7, 1984, and September 17, 1984). The referee's findings were approved on two separate occasions by different judges before this case reached the trial court (Findings signed September 19, 1984; reviewed March 25, 1985). The trial court adopted the referee's findings of fact. Despite the detailed findings and the length of procedure

followed, Norman Johnson still contested the existence of the $80,000 and the values of the property interests. Each party claims that the hiding hole for money in their basement was the other's idea; each professes to have wanted to keep money in the bank, only to be prevented by the other.

The trial court found that the hiding hole was Norman Johnson's idea and that he had control over the missing $80,000. The trial court also accepted expert testimony that the vendor's interest in the contract for deed had a present value discounted to 33 percent of the contract "face" value. The trial court also increased the valuation of Norman Johnson's duplex by $2,000 because he had put on a new roof and painted. Loretta Johnson was granted $16,000 in attorney's fees.

## ISSUES

1. Was the evidence sufficient to justify the trial court's finding that the parties kept $80,000 in their basement and that appellant had secreted it?

2. Did the trial court err in discounting the parties' vendor's interest in the contract for deed on the fourplex?

3. Did the trial court err in increasing the valuation of the duplex?

4. Did the trial court abuse its discretion in granting respondent $16,000 in attorney's fees?

## DISCUSSION

### I

■ The issue of whether the fund existed and what happened to it involve questions of fact for the court because the credibility of the witnesses is determinative.

The scope of review of a finding of fact is narrow. The only issue is whether the evidence was sufficient to support the finding. The scope of review is narrowed because there were no post-trial motions.

The existence of the money was established by Loretta Johnson's testimony,

which was corroborated by the son's testimony and, to a lesser extent, by Norman Johnson's own statements.

The referee and the trial court both had opportunity to observe the demeanor of the witnesses. The Court of Appeals has only the written record. As the court in *Hollom v. Carey* pointed out:

The trial court had the advantage of observing the witnesses and judging their credibility on a first hand basis. Since trial court findings are a product of first hand observation, they possess a certain integrity not contained in the written record alone.

*Hollom v. Carey*, 343 N.W.2d 701, 704 (Minn.Ct.App.1984) (citing *Tamarac Inn, Inc. v. City of Long Lake*, 310 N.W.2d 474 (Minn.1981)). It is not the place of this court to set aside the trial court's findings if they are reasonably supported by the evidence. The evidentiary hearings and the testimony at trial show there was sufficient investigation into these questions of fact. The trial court's findings are supported by the evidence.

### II

■ Norman Johnson has mischaracterized the valuation issue on the contract for deed. A contract for deed is a contractual right to receive money secured by legal title to land. Vendors' interests in contracts for deed are bought and sold every day and are therefore readily evaluated. The value of the vendor's interest in the contract for deed is not the face value of the contract for deed (i.e., what the total of all contract payments and balloon will equal) but the market value of the contract or the present value of the right to receive the income stream on the contract. Market value has been defined as

the price which the owner, if willing but not compelled to sell, could obtain from a buyer, willing but not compelled to buy.

*Lehman v. Hansord Pontiac Co., Inc.*, 246 Minn. 1, 74 N.W.2d 305, 310 (1955).

Loretta Johnson presented expert testimony on the market, or present, value of the contract. That value was expressed as

a 33 percent discount off the face, or total pay-out, of the contract for deed. Norman Johnson has not contested the accuracy of that figure, only the necessity of the discounting. He argues that no investigation was made into the likelihood of sale and, without an immediate intent to sell, there is no need to discount. We disagree; the necessity of selling the fourplex is not at issue. Whether Loretta Johnson keeps the property or sells it, the present value of the vendor's interest in the contract for deed does not change. The value of the interest is the market value of the contract (which is secured by the legal title to the land). The trial court did not err in using the present value of the contract in valuing the vendor's interest.

### III

■ The parties stipulated at the pretrial hearing that each of the duplexes (110 West 27th St. and 2624–26 Blaisdell Ave. So.) was worth $70,000. During the pendency of the pretrial proceedings, Norman Johnson used marital assets to put a new roof on his duplex (2624–26 Blaisdell Ave. So.) and paint the building. He contends his duplex is still worth only $70,000. Loretta Johnson, at trial, maintained that the new roof and painting had increased the value of the building from $70,000 to closer to $75,000. In the findings of fact the trial court chose an intermediate figure of $72,-000.

"[V]aluation is necessarily an approximation in many cases, and it is only necessary that the value arrived at lies within a reasonable range of figures." *Hertz v. Hertz*, 229 N.W.2d 42, 44 (Minn.1975). The valuation of marital assets in a dissolution proceeding is within the trial court's discretion and will not be disturbed on appeal unless clearly erroneous.

This court should affirm the valuation if it is within credible estimates made by competent witnesses.

*Balogh v. Balogh*, 376 N.W.2d 752, 755 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Jan. 31, 1986) (quoting *Petterson v. Petterson*, 366 N.W.2d 685, 687 (Minn.Ct.

App.1985)). Although the range of figures was arrived at from the testimony of the parties themselves as interested witnesses, they are still qualified to give valuation testimony:

In this state the owner of property either real or personal is presumptively acquainted with its value and may testify as to its value.

*Lehman v. Hansord Pontiac Co., Inc.*, 74 N.W.2d at 309. In addition,

an owner of property may as a rule testify to its value without any particular foundation being laid.

*Id.* at 309. In light of Norman Johnson's testimony that he had expended $3,000 in repairs, put on a new roof and painted, a $2,000 increase in the property's value is well within the trial court's discretion.

### IV

■ "The allowance of attorney's fees in dissolution cases rests almost entirely in the trial court's discretion." *Hogsven v. Hogsven*, 386 N.W.2d 419, 421 (Minn.Ct. App.1986) (quoting *Johnson v. Lundell*, 361 N.W.2d 125, 129 (Minn.Ct.App.1985)). The scope of review is narrow because there have been no post-trial motions. The only issue before us is whether the evidence was sufficient to support the trial court's award of attorney's fees.

The trial court found that Norman Johnson had exacerbated the cost of litigation by secreting and diverting marital funds, which necessitated a two-part evidentiary hearing. The trial court found a

long standing scheme or plan on [Norman Johnson's] part to manipulate, secrete and dissipate the assets of the parties in contemplation of a marriage dissolution action.

The parties' behavior is a valid criteria in determining the granting of attorney's fees:

[T]he court may justify its decision due to a party's use of dilatory tactics, attempts to hide assets, and noncooperation with the court and counsel.

*Smolecki v. Smolecki,* 386 N.W.2d 846, 849 (Minn.Ct.App.1986) (quoting *Quade v. Quade,* 367 N.W.2d 87, 90 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn. July 11, 1985)).

In addition, the record shows that Norman Johnson had incurred at least $6,000 in attorney's fees before even receiving his trial attorney's statement. By comparison, Loretta Johnson's attorney's fees of $16,-000 do not appear unreasonably high. Further, the trial court observed the performance of Loretta Johnson's attorney and judged the quality of the legal services performed.

### DECISION

The judgment is affirmed in all respects.

Affirmed.