In re the Marriage of Virginia M.
HOLDER, Petitioner, Appellant,

v.

Donald G. HOLDER, Respondent.

No. C5–86–1576.

Court of Appeals of Minnesota.

March 31, 1987.

Steven T. Rizzi, Jr., Alderson, Ondov,
Leonard & Sween, P.A., Austin, for appel-
lant.

Bryan J. Baudler, Baudler, Baudler & Maus, Austin, for respondent.

Considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Virginia Holder appeals that portion of the dissolution judgment entered June 24, 1986 which failed to find a savings account depleted by her husband to be marital property. She also appeals the award of attorney fees. We affirm in part, reverse in part, and remand.

## FACTS

Virginia and Donald Holder were married August 31, 1963. They have two children, one of whom is a minor.

Virginia, age 44, testified her gross income was $21,719.88 in addition to insurance and retirement benefits from her employment. Donald Holder is a masonry contractor, who describes himself on his tax returns alternatively as a "slave" or "peasant". He has had his own business since 1972. Respondent's income since 1982 has been meager and sporadic—1981: $1,420.45; 1982: $6,030.78; 1983: $4,599.24; 1984: $11,708.14. Respondent has no pension or retirement plan and claims no accounts receivable.

## ISSUES

1. Did the trial court err when it determined that the savings account contained only $4,000 in marital property?

2. Was the award of $1,000 in attorney fees an abuse of discretion when respondent was intransigent and appellant claims fees in excess of $7,000?

## ANALYSIS

1. *Savings Account.*

In early 1984, the savings account contained nearly $23,000. On October 15, 1984, it was $30,839.72. Donald Holder withdrew $28,567 in cash on December 3. The remaining balance was $2,500.01. The dissolution petition was filed December 20, 1984. The account contained $2,704.08 when it was closed the end of January 1985 (for a total of $31,271.08).

Virginia believes the account was marital property and she is entitled to one-half of $31,271.08. Donald argues the large balance resulted from the successful collection of past due accounts and slow business and was uncharacteristic of his business. He testified the money was spent for food, mortgage, rent, lawyers, and child support, although there were no records to support the expenditures. The trial court found

that the [savings account] held by [Donald] prior to the commencement of these proceedings contained $4,000.00 of marital property and therefore [Donald] is held to have consumed $4,000.00 worth of marital assets. The rest and remainder of said account contained [Donald's] income which has been disposed of for * * * living expenses.

And in response to appellant's post-trial motion for amended findings or a new trial, the trial court added:

[Virginia's] main motion focuses on a [savings] account of some $31,000. * * The dispute over this account was fully litigated at trial. *It was also part of the parties' oral stipulation at onset of the trial which was affirmed by each party on the record.*

(Emphasis added.)

The record does not support the trial court's determination that an oral stipulation controlled the distribution of the savings account. Appellant stated the account contained approximately $31,000. Respondent accepted the figure, but disputed that the entire account was marital. The statements do not constitute an agreement as to the marital or nonmarital nature of the account or its proper distribution. Virginia Holder did not agree as to how the account should be valued or distributed. There was no oral stipulation with regard to the savings account.

■ The trial court's finding that the account contained Donald's personal income which was properly used for living expenses does not justify the account's depletion. Income is not excluded by statute from being considered marital property, and logically once income is earned it becomes property.

"Marital property" means property, real or personal, * * * acquired by the parties, or either of them, to a dissolution * * * at any time during the existence of the marriage relation between them. * * All property acquired by either spouse subsequent to the marriage and before a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in a form of co-ownership * * *. Each spouse shall be deemed to have a common ownership in marital property that vests not later than the time of the entry of the decree in a proceeding for dissolution * * *. The presumption of marital property is overcome by a showing that the property is nonmarital property.

Minn.Stat. § 518.54, subd. 5 (1984).

■ A showing that property is nonmarital must be by a preponderance of the evidence. *Cummings v. Cummings*, 376 N.W.2d 726, 731 (Minn.Ct.App.1985). The money deposited in the account was income earned by Donald Holder and was marital property. *See Rohling v. Rohling*, 379 N.W.2d 519, 522 (Minn.1986). The trial court's valuation and division of the savings account has no "acceptable basis in fact or principle" and must be reversed. *Id.*

2. *Attorney Fees.*

Attorney fee awards rest in the trial court's discretion and normally will not be disturbed absent a clear abuse of discretion. *Smolecki v. Smolecki*, 386 N.W.2d 846, 849 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. July 16, 1986). Attorney fee awards enable spouses who lack sufficient financial resources of their own to carry on and contest the proceeding.

Minn.Stat. § 518.14 (1984). Virginia, however, earns a regular income which exceeds the uncertain business receipts of her spouse.

■ Financial resources are not the sole rationale for awards. Fee awards may be based on the impact a party's behavior had on the costs of litigation. For example, in *Burton v. Burton*, 365 N.W.2d 310 (Minn. Ct.App.1985), *pet. for rev. denied*, (Minn. May 31, 1985), the husband was ordered to pay his wife's fees because

[his] efforts to obstruct discovery and his refusal to comply with court orders caused [his wife's] attorney to spend significantly more time on this dissolution than would have been necessary had [the husband] cooperated.

*Id.* at 312; *see also Johnson v. Johnson*, 392 N.W.2d 922, 925 (Minn.Ct.App.1986).

■ In addition to withdrawing assets upon learning of the dissolution, Donald Holder was uncooperative by forcing appellant to bring several motions to compel answers to interrogatories. The trial court awarded $200 for "costs and disbursements" during discovery and $1,000 in attorney fees as part of the dissolution order. These awards are not a clear abuse of discretion even though Virginia claims nearly $7,500 in legal fees. The trial court, however, might reconsider the attorney fees question on remand in connection with its evaluation and disposition of the savings account.

**DECISION**

1. The parties did not enter into an oral stipulation which controlled the court's evaluation and distribution of the savings account.

2. The trial court did not abuse its discretion in awarding appellant $1,200 in attorney fees and costs, even though she earned more than her husband, when his lack of cooperation increased the costs of litigation.

Affirmed in part, reversed in part, and remanded.

CRIPPEN, Judge, dissenting.

In the course of a description of marital assets already divided by the parties, the trial court found respondent had received (and "consumed") marital property of $4000 by using money that had been on deposit in a Home Federal Savings and Loan Association account. In the words of the court, the account contained "$4,000.00 of marital property and therefore Respondent is held to have consumed $4,000.00 worth of marital assets."

The court made a further finding to deal with additional sums that had once been on deposit in the account. The court found:

The rest and remainder of said account contained income which has been disposed of for living expenses.

Thus, the court resolved conflicting evidence about the source of deposits into the account and the disposition of respondent's withdrawals from it.

Contesting these findings of the trial court, appellant has argued the Home Federal account "held more than $4,000.00 of marital property" and "contained $31,271.08 of marital property." What does this argument mean? What is the issue?

In parts of her argument, appellant suggests the trial court failed to recognize that all of the account had been marital property. Thus, the majority correctly observes that earned income may become marital property. However, this argument of appellant misstates the issue of the case. The trial court said only part of the account was marital property and the rest was income used for living expenses. The court was not engaged in finding whether or not property was marital. Instead, the court was addressing respondent's claim that he had needed and used most of the account proceeds for living expenses.

Read in its entirety, appellant's argument is on track; appellant claims respondent did not use the account withdrawals for living expenses, but that he improperly depleted marital funds. Alternatively, if the money was used to meet necessary expenses, appellant argues respondent should be faulted for not doing what he could to earn enough money to meet his needs. See Jungbauer v. Jungbauer, 391 N.W.2d 56, 58 (Minn.Ct.App.1986).

The payment of living expenses does not constitute a dissipation of marital assets to be treated as a distribution of marital property to the payor. Griepp v. Griepp, 381 N.W.2d 865, 869 (Minn.Ct.App.1986). As to all but $4000 once on deposit in the Home Federal account, the trial court found that it had been "disposed of for living expenses of Respondent." This finding is supported by competent evidence. Respondent testified the money was spent for food, mortgage costs, real estate taxes, rent, income taxes, job costs, child support, attorney fees, and court costs. Respondent also testified that these funds were his only means of support at the time.

We are not to set aside the trial court's findings of fact unless they are clearly erroneous. Minn.R.Civ.P. 52.01. There was no clear error in the trial court's findings that respondent withdrew most of the money deposited in the Home Federal account and spent it for current needs. A decision to reverse, stemming from a misstatement of the real issue in the case, inadvertently but clearly substitutes our judgment for the trial court's finding on a question of fact. The substitution of a fact finding is particularly harmful and unjustified when made regarding a single item of property and without regard for the full scope of issues resolved by the trial court in deciding upon a fair and equitable division of the property of the parties.

The decision to reverse is introduced with a refutation of the trial court's post-trial observation that the dispute on the account had been fully litigated at trial and "was part of the parties' oral stipulation at onset of the trial which was affirmed by each party on the record." To dispute the statement of the trial court, we must interpret it, wrongfully I think, to state a claim that the issue had been resolved according to an agreement of the parties. If this were the claim of the trial court, it would not have noted that the matter had been fully litigated. The reference to the stipulation merely

suggests that it was evident throughout the course of the trial that the account was in dispute and that the account once contained approximately $31,000.

Because the law of the case compels us to affirm, I respectfully dissent.