**STATE of Minnesota, Respondent,**

v.

**Cynthia Lue DAVIS, Appellant.**

**No. C7–02–215.**

Court of Appeals of Minnesota.

Feb. 25, 2003.

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, Minnesota Public Defender, Theodora Gaïtas, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge, ANDERSON, Judge, and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant Cynthia Lue Davis challenges her conviction of arson in the first degree, arguing that the district court erred by refusing to instruct the jury on fourth-degree arson as a lesser-included offense and that the evidence was insufficient to support a conviction of first-degree arson. Because the district court abused its discretion by failing to instruct the jury on fourth-degree arson, we reverse.

## FACTS

Davis admitted that she intentionally set fire to a couch located in the basement of Oxford House, a residence for people recovering from alcohol and chemical dependency. The facility is a side-by-side duplex, connected by a single door in the basement. One side of the duplex houses eight male residents. The other side of the duplex houses eight female residents. Formal rules govern the residents' behavior. Residents of each unit decide who can live there.

Davis was a resident of Oxford House, but at a meeting just a few hours before she started the fire, the residents of the female unit, including Davis, agreed that Davis would have to leave Oxford House because she was not getting along with the other residents. Davis requested, and was granted, permission to remain for one more night. During the meeting, Davis mentioned that the smoke detector near the bedrooms needed new batteries, an issue she had noted when she first moved to Oxford House. Davis also disclosed that her mother had died in a fire.

After the meeting, Davis bought some batteries and had another resident help her install them in the smoke detector. When all of the female residents had gone to bed, Davis went to the basement and used a cigarette lighter to ignite an exposed piece of foam between the cushion and springs of the couch. Davis testified that she intended to make the couch smolder and create smoke, but did not intend to damage the building. As Davis left the basement, she noticed that the fire she started had accelerated into flames. She testified that she continued upstairs to get a fire extinguisher, but when she got to the main floor, someone was in the kitchen. Davis went to the living room and waited for that person to go back to bed, so her involvement in the fire would not be known. But Davis was unable to return to the basement due to the amount of smoke. Davis noticed that smoke was coming through the living room floorboards.

Two male residents who had discovered the fire on their side of the basement entered the female unit through the front

door to alert the residents. One of the men saw Davis standing in the living room, wearing her coat, as smoke rose through the floorboards. He yelled at Davis to wake up the residents. All of the residents escaped.

Davis first denied, but later admitted, starting the fire. She also admitted that she had unsuccessfully tried to set the same couch on fire earlier in the afternoon, using a lighted cigarette.

St. Paul fire investigator Michael Domagall testified that the physical evidence did not support Davis's testimony that she only ignited the couch and that it was more likely that the fire was started in two places: at the base of the door separating the two halves of the duplex and in the couch.

The district court denied Davis's request that the jury be instructed on fourth-degree arson as a lesser-included offense. The jury found Davis guilty of first-degree arson. She was sentenced pursuant to the Minnesota Sentencing Guidelines to an executed term of imprisonment of 58 months (4.83 years). This appeal followed.

## ISSUE

Did the district court abuse its discretion by denying Davis's request to instruct the jury on fourth-degree arson as a lesser-included offense of first-degree arson?

## ANALYSIS

■ Whether to submit a lesser-included offense to the jury lies within the sound discretion of the district court. *Bellcourt v. State*, 390 N.W.2d 269, 273 (Minn.1986). Where the evidence presented warrants such an instruction, the court must give it. *Id.* The failure to give a lesser-included instruction is grounds for reversal only if the defendant is prejudiced. *Id.* Prejudice exists when there was a rational basis to acquit on the great-

er offense and convict on the less serious charge. *Id.* at 273–74. A trial court has no discretion to instruct a jury regarding a lesser, but non-included, offense. *State v. Gisege*, 561 N.W.2d 152, 157 (Minn.1997).

Davis was charged with first-degree arson of a dwelling:

Whoever unlawfully by means of fire or explosives, intentionally destroys or damages any building that is used as a dwelling at the time the act is committed, whether the inhabitant is present therein at the time of the act or not, or any building appurtenant to or connected with a dwelling whether the property of the actor or of another, commits arson in the first degree * * *.

Minn.Stat. § 609.561, subd. 1 (2000). The standard jury instruction for first-degree arson uses the definition of "dwelling" found in the burglary statutes: " 'Dwelling' means a building used as a permanent or temporary residence." Minn.Stat. § 609.581, subd. 3 (2000); CRIMJIG 18.02.

Davis requested that the jury be instructed on fourth-degree arson as a lesser-included offense.

Whoever intentionally by means of fire or explosives sets fire to or burns or causes to be burned any personal property in a multiple unit residential building or public building and arson in the first, second, or third degree was not committed is guilty of [arson in the fourth degree] * * *.

Minn.Stat. § 609.5631, subd. 2 (2000).

■ The test for submission of lesser-included offenses is a two-part test: (1) whether the offense in question is an "included" offense under section 609.04, which defines "included" offenses, and (2) whether there is a "rational basis" for the jury to acquit the defendant of the greater offense and convict her of the lesser offense.

*State v. Griffin,* 518 N.W.2d 1, 3 (Minn. 1994); *see also State v. Leinweber,* 303 Minn. 414, 421–22, 228 N.W.2d 120, 125–26 (1975).

> An included offense may be any of the following:
>
> (1) A lesser degree of the same crime; or
>
> (2) An attempt to commit the crime charged; or
>
> (3) An attempt to commit a lesser degree of the same crime; or
>
> (4) A crime necessarily proved if the crime charge were proved; or
>
> (5) A petty misdemeanor necessarily proved if the misdemeanor charge were proved.

Minn.Stat. § 609.04, subd. 1 (2000). Fourth-degree arson is a lesser degree of arson and is therefore a lesser-included offense of first-degree arson under Minn. Stat. § 609.04, subd. 1(1).

The issue in this case is whether the district court abused its discretion by determining that there was no rational basis for the jury to convict Davis of fourth-degree arson.

Davis specifically requested that the jury be instructed that:

> The elements of arson in the fourth degree are:
>
> First, a couch at 569–571 Grand Avenue was burned by fire. It is not necessary that this couch was destroyed or seriously damaged. It is enough if there was damage to the couch or any part of it.
>
> Second, the defendant intentionally caused the fire. This means that the defendant acted with the purpose of destroying or damaging the couch at 569–571 Grand Avenue or with the belief that the act would cause the building (sic) to be destroyed or damaged.[1]
>
> Third, the building at 569–571 was a multiple unit residential building.
>
> Fourth, the defendant's act took place on or about March 21, 2001 in Ramsey County.

The state objected, arguing that Oxford House is not a public building or a multiple-unit residential building. The district court concluded that Davis could not be convicted of fourth-degree arson because the building involved was a dwelling and was not a multiple-unit residential building or a public building within the meaning of Minn.Stat. § 609.5631, subd. 2 (2000).

A public building is defined, in relevant part, as "a building such as a * * * dormitory * * *." Minn.Stat. § 609.5631, subd.1(2) (2000). A multiple-unit residential building is defined as a "building containing two or more apartments." Minn. Stat. § 609.5631, subd. 1(b)(2000). Davis argued that a duplex fits the definition of multiple-unit building and that, given the living arrangements, Oxford House also qualified as a dormitory. The district court noted that no evidence in the record indicated the units were "apartments" as used in Minn.Stat. § 609.5631 subd. 1(b).

Our review of case law indicates that this court has used the term "apartment" to describe the residential units in a duplex. *See e.g. Johnson v. Johnson,* 392 N.W.2d 922, 923 (Minn.App.1986); *Johnson v. Miller,* 371 N.W.2d 94, 95 (Minn. App.1985). The legislature has specifically exempted duplexes in legislation allowing city councils to restrict apartment houses in certain zones: "nothing herein * * * shall be construed to exclude double residences or duplex houses * * *." Minn. Stat. § 462.12 (2000). Because the statu-

---

1. We presume the reference to the building in this sentence is a typographical error and that the intent was to refer to the couch, not the building.

tory definition of "multiple unit residential buildings" includes two-unit buildings, and because the legislature did not exclude duplexes from the definition, we conclude that Oxford House meets the definition of a multiple-unit residential building, as used in the statute defining fourth-degree arson. We decline to reach the issue of whether, because of its use, the duplex also met the definition of "public building."

■■■ Because Oxford House is a multi-unit residential building as used in the definition of fourth-degree arson and based on Davis's version of events, there was a rational basis under which the jury could have convicted Davis of fourth-degree arson and acquitted her of first-degree arson. And Davis was prejudiced by the court's failure to instruct on the lesser-included offense. Davis confessed to starting the fire so the jury may have been inclined to convict her of the only crime on which they were instructed. It is possible that, if conviction of fourth-degree arson had been available, the jury may have evaluated the intent evidence differently. Davis is entitled to a new trial at which the jury shall be instructed on the lesser-included offense of fourth-degree arson.

■■■ Davis also argues that the state failed to produce sufficient evidence of her intent to damage the building to support her conviction of first-degree arson. Davis argues that the state only offered circumstantial evidence to prove intent and, therefore, her conviction must be subjected to stricter scrutiny. In order to convict based solely on circumstantial evidence, the evidence must form a complete chain that, when considering the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt. *State v. Jones,* 516 N.W.2d 545, 549 (Minn.1994). But the Jones rule applies to evidence supporting conviction *as a whole,* not evidence of each individual element of that conviction.

■■■ The intent element of a crime, because it involves a state of mind, is generally proved circumstantially, and the jury is in the best position to evaluate the credibility of witnesses and weigh the evidence regarding intent. *See State v. Cooper,* 561 N.W.2d 175, 179–80 (Minn.1997). Circumstantial evidence is entitled to the same weight as direct evidence. *State v. Bauer,* 598 N.W.2d 352, 370 (Minn.1999). A jury's decision to reject a defendant's testimony regarding intent is entitled to due deference. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). There is circumstantial evidence in the record sufficient to allow a reasonable jury to find the requisite intent to commit first-degree arson. And there is direct evidence to support conviction of first-degree arson.

We do not reach the additional issues raised by Davis in her pro se brief, none of which was supported by authority.

## DECISION

Because fourth-degree arson is a lesser-included offense of first-degree arson, and because there was a rational basis for the jury to convict Davis of the lesser-included offense of fourth-degree arson, the district court abused its discretion in declining to instruct the jury on fourth-degree arson and Davis is entitled to a new trial.

**Reversed and remanded.**