*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0075**

State of Minnesota,
Respondent,

vs.

Abdiaziz Ali Adan,
Appellant.

**Filed November 9, 2015
Reversed
Larkin, Judge**

Washington County District Court
File No. 82-CR-14-583

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Peter J. Orput, Washington County Attorney, Jessica L. Stott, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of fourth-degree assault of a correctional employee (intentional transfer of bodily fluids), arguing that the evidence was insufficient to sustain his conviction. Because the inferences that may be drawn from the circumstances proved at trial do not exclude the reasonable hypothesis that appellant did not intend to spit at or onto the correctional officer, we reverse the conviction.

## FACTS

Respondent State of Minnesota charged appellant Abdiaziz Ali Adan with fourth-degree assault of a correctional employee. The complaint alleged that Adan was an inmate at the Stillwater Correctional Facility and that when a correctional officer escorted another inmate past Adan's cell, Adan "spit in the direction of the inmate," and "[s]ome of the spit landed on [the officer's] face and neck." The case was tried to a jury, and a summary of the trial evidence follows.

On December 22, 2013, Adan and his brother were secured in cell 604. At approximately 9:00 p.m., two inmates with the last names Ali and Mohammed[1] began fighting nearby on the "gallery," a narrow, railed hallway along the inmates' cells that overlooks an open area below. Officers broke up the fight, but Ali, as well as inmates in their cells, continued to yell boisterously. Officer Shane Warnke and another officer escorted Mohammed from the scene. When they passed cell 604, Mohammed exchanged words with Adan and Adan's brother. Officer Warnke stopped and spoke with Adan and

---

[1] The trial transcript does not include Ali's and Mohammed's full names.

his brother, and then he handed Mohammed off to another officer at the stairwell. Meanwhile, Officers Samuel Moore and Luke Robie escorted Ali from the area. Officer Moore walked between Ali and the cells. Officer Robie walked ahead of them. As they passed cell 604, Ali argued with Adan and his brother. Officer Robie heard the exchange, turned around, and saw Ali spit into cell 604.

At that point, spit emanating from inside cell 604 landed on Officer Moore. Officer Moore testified that he "felt a spray of spit across the right side of [his] face," that the spit came from cell 604, and that he told Officer Warnke that Adan had spat on him. On cross-examination, Officer Moore acknowledged that he did not see Adan spit or see where the spit came from. Officer Warnke testified that when he turned around, "spit came flying out of . . . cell 604, striking Officer Moore." Both Officer Moore and Officer Warnke testified that Adan was standing at the front of cell 604, by the bars, and that his brother was standing in the rear. Officer Robie testified that he did not see Adan spit on anyone and that none of the officers said that Adan had spit on anyone.

Officer Robie pulled Ali away from cell 604, put a spit mask on him, and escorted him to a nearby break area. Officer Robie then returned to cell 604, where Adan and his brother were yelling, and attempted to calm them. Officer Robie testified that the brothers complied and that Adan said something like, "I respect that. I understand. I don't have any problems with you." The officers handcuffed Adan and his brother. According to Officer Warnke, Adan was compliant, but his brother was yelling, saying "offensive things," and potentially inciting other individuals. Once Adan and his brother were handcuffed, Officer Robie put a spit mask on Adan's brother, and Adan shook his

3

head and laughed.  Officer Robie testified that he asked Adan what was funny and that Adan admitted that he was the one who "spit on him," and not his brother.

After Officer Robie identified Adan in the courtroom, he and the prosecutor had the following exchange:

> Q:  Is the individual that you just identified the one who admitted to spitting on Correctional Officer Moore?
> A:  Yes—no.  He was the one who admitted to spitting on Offender Ali—Inmate Ali, excuse me.
> Q:  Okay.  And then that spit landed on Correctional Officer Moore?
> A:  That is to my understanding.

On cross-examination, Officer Robie stated that Adan "said that he was the one who spit."  The defense attorney asked Officer Robie if he "took that as [Adan] spit at Mr. Ali," and Officer Robie stated, "Correct."

In addition to presenting the correctional officers' testimony, the state played a video recording of the incident.  During deliberations, the jurors asked to watch the video again.  The district court allowed them to watch the video two more times at normal speed.  Approximately one-and-one-half hours later, the jury asked a question:  "Would intentional spitting and accidentally hitting the correctional officer constitute this crime?"  The district court told the jury that it was unable to answer the question and directed them to carefully review the jury instructions and continue deliberating.[2]

---

[2] The state had requested a jury instruction regarding transferred intent.  The district court denied the request, reasoning that the transferred-intent doctrine was inapplicable because inmate Ali was not in the class of victims protected by the charging statute.  *State v. Merrill*, 450 N.W.2d 318, 323 (Minn. 1990) ("Ordinarily, the doctrine of transferred intent applies when the intent being transferred is for the same type of harm.  If the harms

4

The jury ultimately found Adan guilty, and the district court imposed a consecutive sentence of 180 days in prison. Adan appeals his conviction.

### DECISION

Adan contends that the evidence is insufficient to sustain his conviction for fourth-degree assault. When reviewing a jury verdict, an appellate court considers whether the legitimate inferences drawn from the evidence would permit a jury to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). Review is limited to a close analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jury to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

A person commits fourth-degree assault if he "intentionally throws or otherwise transfers bodily fluids . . . at or onto" an employee of a correctional facility while the employee "is engaged in the performance of a duty imposed by law, policy, or rule." Minn. Stat. § 609.2231, subd. 3, 3(2) (2012). "'Intentionally' means that the actor either

---

are different, intent is not transferable."). The state does not argue for application of the transferred-intent doctrine on appeal.

5

has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(3) (2012). It may be inferred that "a person intends the natural and probable consequences of his actions." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997).

Adan does not dispute that he spit onto Officer Moore or that Officer Moore was an employee of a correctional facility engaged in the performance of a duty imposed by law at the time of the incident. The sole issue raised in this appeal is whether the evidence is sufficient to prove that appellant intentionally spat at or onto Officer Moore.

The parties agree, and we conclude, that the evidence regarding Adan's intent is circumstantial. *See State v. Davis*, 656 N.W.2d 900, 905 (Minn. App. 2003) (stating that "[t]he intent element of a crime, because it involves a state of mind, is generally proved circumstantially"), *review denied* (Minn. May 20, 2003). An appellate court applies heightened scrutiny when reviewing a verdict based on circumstantial evidence. *Pratt*, 813 N.W.2d at 874. The circumstances proved must be consistent with guilt and inconsistent with any other rational hypothesis negating guilt. *Id.* "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). If the circumstances proved are consistent with reasonable hypotheses of both guilt and innocence, then there is a reasonable doubt regarding guilt and the conviction cannot stand. *Id.* at 474.

6

Minnesota courts employ a two-step process when reviewing convictions based on circumstantial evidence. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). First, the reviewing court identifies the circumstances proved. *Id.* In doing so, the court views the evidence in the light most favorable to the verdict. *See Pratt*, 813 N.W.2d at 874 (stating that the supreme court had considered the evidence "in the light most favorable to the verdict" when determining the circumstances proved). The court defers to the fact-finder's acceptance and rejection of proof and to its credibility determinations. *Andersen*, 784 N.W.2d at 329; *see also State v. Hughes*, 749 N.W.2d 307, 312 (Minn. 2008) (stating that juries are "in the best position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony").

Next, the reviewing court examines the reasonableness of the inferences that can be drawn from the circumstances proved, including inferences of innocence as well as guilt. *Andersen*, 784 N.W.2d at 329. All of the circumstances proved must be consistent with guilt and inconsistent with any other rational hypothesis negating guilt. *Id.* The reviewing court does not defer to the fact-finder's choice between rational hypotheses. *Id.* at 329-30. However, a rational hypothesis negating guilt must be based on more than mere conjecture or speculation. *Al-Naseer*, 788 N.W.2d at 480; *Andersen*, 784 N.W.2d at 330.

Viewing the evidence in the light most favorable to the jury's guilty verdict, the circumstances proved are as follows: Adan was in cell 604 standing behind the bars; Mohammed argued with Adan as he was escorted past cell 604; Ali also argued with

7

Adan as he was escorted past cell 604; Ali spat into cell 604; Adan spat out of cell 604; Adan's spit landed on Officer Moore, and Adan admitted that he spat at "him."

The state contends that another circumstance proved is that when Adan spat, "the surveillance video shows that [Officer Moore] was standing directly in front of [Adan], with approximately a foot in distance between them, and inmate Ali had already walked past the cell door and was not in a position to be spit on." But the video does not support the state's factual summary or the purported circumstance proved. The recording shows Officer Moore and Ali walking past Adan's cell. It also shows Officer Moore reacting to something (presumably being struck by the spit, which is not visible on the recording) and turning toward cell 604. The recording shows that when Officer Moore reacted, Ali was only a half-step ahead of the officer and well within "spitting distance" of Adan. Although we view the evidence in the light most favorable to the verdict when determining the circumstances proved, we reject the state's suggested circumstance as lacking evidentiary support.

Lastly as to the circumstances proved, the parties argue regarding the significance of Officer Robie's testimony that Adan admitted that he was the one who spat on "him." Adan argues that "him" refers to Ali. The state argues that "him" is ambiguous and that when viewed in the light most favorable to the verdict, "him" must be interpreted as referring to Officer Moore. We think the parties put undue emphasis on this testimony. In terms of a circumstance proved, the testimony merely establishes that the spit that landed upon Officer Moore emanated from Adan, which is undisputed. Whether Adan

8

intended to spit at or onto Officer Moore depends on inferences drawn from the circumstances proved.

The state argues that "[b]ased on the circumstances proved and all reasonable inferences that can be drawn from them[,] the only rationale hypothesis is that [Adan] intended to spit at or onto [Officer] Moore." We disagree. Two competing inferences can be drawn from the circumstances proved: (1) Adan intended to spit at or onto Officer Moore or (2) Adan intended to spit on Ali but unintentionally spat at or onto Officer Moore. The first hypothesis is reasonable given the proximity of Officer Moore to Adan when Adan spit. *See Cooper*, 561 N.W.2d at 179 ("[A] person intends the natural and probable consequences of his actions."). The second hypothesis is also reasonable. Ali argued with Adan and spat into Adan's cell as he walked by. Adan spat out of his cell immediately thereafter, before Ali had passed the door of Adan's cell. The open hostility between the two men and the natural urge to immediately retaliate in kind to such a degrading personal offense is self-evident. The second hypothesis is therefore not based on mere conjecture or speculation. *See Al-Naseer*, 788 N.W.2d at 480 (stating that "a defendant is not relying on conjecture or speculation when [he] . . . points to evidence in the record that is consistent with a rational theory other than guilt") (quotation omitted). Although the jury's verdict indicates that it chose the first hypothesis instead of the second, a reviewing court does not defer to the jury's choice between reasonable hypotheses. *Andersen*, 784 N.W.2d at 329-30.

9

Because the circumstances proved are consistent with a rational hypothesis negating Adan's guilt, there is reasonable doubt regarding Adan's guilt and his conviction must be reversed.

**Reversed.**