**In re the Marriage of Dorothea A. BURY, Petitioner, Respondent,**

**v.**

**Richard B. BURY, Appellant.**

**No. C9–87–814.**

Court of Appeals of Minnesota.

Dec. 1, 1987.

Stephen C. Davis, Brian L. Sobol, Katz, Davis & Manka, Ltd., Minneapolis, for petitioner-respondent.

Denver Kaufman, Sharon A. Fullmer, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for appellant.

Heard, considered and decided by WOZNIAK, P.J., FOLEY and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant challenges the valuation and division of marital property, and the award of maintenance and attorney fees to respondent. We affirm.

## FACTS

Appellant Richard B. Bury and respondent Dorothea A. Bury were divorced on December 26, 1986, after a 29–year marriage. During the marriage, respondent occupied the role of traditional homemaker, actively caring for the couple's four children, all of whom were emancipated by the time of the trial. She has no college degree and no special vocational training, and has not had full-time employment in the last five years. She has a diabetic condition which she can control with insulin, diet, and exercise. The trial court found she is unable to support herself and had insufficient property to provide for her rea-

sonable needs, projected at $3525 per month.

Appellant holds a college degree in civil engineering and is sole owner and president of Midwest Asphalt Corporation.

The trial court made findings of fact identifying marital property and the valuation of each item. The court found that appellant's financial resources were far greater than respondent's. Based on these findings, the court decided that respondent was entitled to maintenance of $12,000 per year, attorney fees, and a cash payment over several years, as well as a great deal of the marital property.

The court awarded $606,000 cash to respondent: $106,000 payable within 180 days of the judgment, and $500,000 by promissory note payable over 10 years in installments of $50,000. Each principal payment is to include six percent interest on the unpaid balance.

The court awarded the homestead and adjacent rental property to respondent, after valuing them at $137,000 and $52,500, respectively. Appellant testified on his own behalf that the house, which has frontage on Glen Lake, is worth at least $200,000 and the fair market value of the rental property is $80,000. Appellant contended that, as owner, his testimony as to the value of the properties was fully competent and was erroneously disregarded by the trial court. He argued that respondent's witness undervalued these properties, and he attacked the credibility of respondent's appraiser.

Respondent's witness determined the property value by market analysis, comparing the house with other similar properties and making adjustments for "dissimilarities with respect to value influence." He testified that this is a proper method of determining market value. Respondent's appraiser admitted on cross-examination that other houses he looked at for comparison were not lakefront property, and that he had no direct experience regarding the value of lake frontage property on Glen Lake. The court accepted the valuation by respondent's appraiser.

Appellant contended the trial court also overvalued his company, Midwest Asphalt Corporation, thereby overestimating his divided part of marital assets. The parties presented conflicting testimony by two certified public accountants. Respondent's witness testified that he used four valuation methods that are "generally recognized as valid and acceptable methods of valuing a business that is operating as a going concern." Taking into account the going concern and/or goodwill value, and a 15% marketability discount because of the closely held nature of the corporation, the expert arrived at $1,450,000 as the most likely market value, which the trial court adopted.

Using an adjusted book value method, appellant's expert valued the business at between $356,000 and $588,000. He testified the book value was $740,000 and reduced that by $152,000, to $588,000, eliminating the value of stock in Walburn, Ltd. because of risk associated with pending litigation.

The trial court rejected this appraisal. First, it was found flawed because it considered only tangible assets, and did not take into account any of the intangible assets associated with the "going concern" value of an operating business. In the 15 years appellant owned the company, it acquired value in longstanding relationships with banks and bonding companies, and in its own raw material supply sources.

Second, the expert did not adjust the value to reflect the fair market value of the land and buildings, which would have resulted in an adjusted book value of $973,545 for the corporation.

Third, the court found that the expert overvalued the contingent liability of Midwest Asphalt from an environmental damage lawsuit. The corporation is the general partner owning a one-third interest in a Minnesota limited partnership known as Walburn, Ltd. Walburn is one of multiple defendants in two lawsuits filed in connection with the alleged contamination of groundwater in the New Brighton area. Walburn has been designated an "indispensable party" under the statute, meaning that there is an insufficient basis to find it

a "responsible party" and that its obligation is to cooperate with the designated responsible parties in the clean-up efforts on the sites.

Respondent's expert admitted on cross-examination that the contingent liability might adversely impact the marketability of appellant's interest in Midwest Asphalt, and consequently the trial court discounted Bremer's fair market value figure by 30%, to $1,015,000.

## ISSUES

1. Did the trial court err in awarding more of the marital property to respondent than to appellant?

2. Did the trial court err in its valuation of the parties' marital property?

3. Did the trial court err in granting spousal maintenance to respondent?

4. Did the trial court err in requiring appellant to pay respondent's attorney fees?

## ANALYSIS

### I.

■ The trial court has broad discretion for property divisions, child support, and spousal maintenance. *Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977); *Novick v. Novick,* 366 N.W.2d 330, 332 (Minn.Ct.App. 1985). If the trial court's determination has reasonable and acceptable basis in fact and principle, the reviewing court must affirm. *Novick,* 366 N.W.2d at 332 (citing *DuBois v. DuBois,* 335 N.W.2d 503, 507 (Minn.1983)).

On appeal from a property settlement in a dissolution case, appellant has the burden of showing that the trial court abused its discretion in granting an award. *Quade v. Quade,* 367 N.W.2d 87, 89 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. July 11, 1985) (citing *Swanson v. Swanson,* 233 Minn. 354, 362, 46 N.W.2d 878, 883 (1951)).

Appellant contends that the trial court's marital property distribution was vastly unfair in that a disproportionate amount was awarded to respondent.

Equity does not require an equal division; "[e]quitable, not equal, division of marital property is required." *Olness v. Olness,* 364 N.W.2d 912, 915 (Minn.Ct.App. 1985) (quoting *Stassen v. Stassen,* 351 N.W.2d 20, 23 (Minn.Ct.App.1984)).

Respondent was awarded $920,926 or 50.2% and appellant $913,862, or 49.8%, out of a total of $1,834,788. Appellant's conflicting description of the division includes three items not part of the property division: the maintenance award, attorney fees, and interest payments. The trial court's property division was well within the parameters of its discretion.

### II.

■ The trial court is not required to be mathematically exact in its valuation of assets as long as "the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson,* 277 N.W.2d 208, 211 (Minn.1979). Unless they are clearly erroneous, a trial court's findings on the value of assets will not be disturbed. *Olness,* 364 N.W.2d at 915; Minn.R.Civ.P. 52.01.

a. The parties' home and rental property on Glen Lake.

The trial court valued the properties on Glen Lake at $137,000 and $52,500, for a total of $189,500. Because they were awarded to respondent, appellant contends the value of property awarded to her has been understated.

■ We affirm the valuation if it is "within credible estimates made by competent witnesses." *Johnson v. Johnson,* 392 N.W.2d 922, 925 (Minn.Ct.App.1986). Appellant was competent to testify as to the value of his properties; parties who are interested witnesses are nevertheless qualified to give valuation testimony in a dissolution proceeding. *See id.* In Minnesota, the owner of property is "presumptively acquainted with its value" and may testify thereto, and may as a rule testify as to its value without any particular foundation being laid. *Id.* (quoting *Lehman v. Hansord Pontiac Co.,* 246 Minn. 1, 6, 74 N.W.2d 305, 309 (1955)).

The difference between the witnesses' valuations is inescapably a credibility issue. *See Johnson v. Boulanger,* 366 N.W.2d 675, 677 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 11, 1985); Minn.R.Civ.P. 52.01. Respondent's appraiser's valuation, accepted by the trial court, fell within a reasonable range of the figures offered by competent witnesses. For the trial court to have found respondent's valuation more accurate than appellant's was not clearly erroneous.

b. Appellant's interest in Midwest Asphalt Corporation.

A trial court's determination of the value of a business in a dissolution proceeding will not be set aside on appeal unless clearly erroneous. *Nemitz v. Nemitz,* 376 N.W.2d 243, 246 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985).

The principal discrepancy between appraisals appeared in the valuation of the tangible assets. The evidence showed that the buildings and property had a real value of $378,545 above the adjusted book value, for which appellant's appraisal did not account. Again, the differences in the experts' appraisals were inescapably a credibility issue and we must defer to the trial court's judgment.

Another discrepancy between the appraisals was respondent's expert's estimation of the good will value of the business at $321,524, using the measure of capitalized "excess earnings." The expert also estimated the going concern value of the business at $509,000. The range of values found by this expert taking into account good will and/or going concern value is $1,200,000 to $1,650,000, with the most likely point of purchase or sale of $1,450,000. Conversely, appellant's expert testified that the potential liability from the Walburn litigation negated the good will value of the company, and ascribed no value to any of the intangible assets commonly associated with a going concern. Again, there is a conflict between experts and we must defer to the trial court's evaluation of their credibility. Moreover, we note that after taking into account the impact of the Walburn litigation, the trial court valued the corporation at $1,015,000, only $41,455 over its adjusted book value of $973,545.

Appellant contends it was particularly erroneous for the trial court to greatly underestimate the negative impact of the Walburn litigation. An environmental lawyer testified for appellant that he would recommend bankrupting Midwest Asphalt, because its liabilities exceed its assets and that if appellant sold the business he would still face the risk of liability. Appellant contends that it was therefore particularly erroneous for the trial court to look at anything except the value of assets because the extreme threat to the corporation would force it to liquidate its assets. We note again that the record includes credible evidence that the present value of the corporation's assets was nearly $1,000,000. The fair market value of the land and buildings was $973,545, including the $378,545 real value in excess of book value which appellant overlooked.

Trial court findings demonstrate that the court fairly considered evidence establishing the value of the corporation and its potential liability in pending litigation. We conclude the trial court's findings on the value of Midwest Asphalt Corporation were well sustained by the evidence.

**III.**

The trial court is granted wide discretion in determining the amount and duration of spousal maintenance, and its determination is final unless the trial court abuses its broad discretion. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982). The standard the trial court must follow is set forth in Minn.Stat. § 518.552:

the court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance:

(a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or

(b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment.

Minn.Stat. § 518.552, subd. 1 (1986).

The essence of appellant's argument is that the trial court failed to follow Minnesota law when it determined maintenance without considering his ability to pay maintenance in light of the property division, as well as respondent's need for payment and ability to support herself. Minn.Stat. § 518.552, subd. 2; *Kramer v. Kramer,* 372 N.W.2d 364, 367 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985); *Krick v. Krick,* 349 N.W.2d 350, 352 (Minn. Ct.App.1984). Thirty-two thousand dollars of his income is allocated to mortgages, and he faces major cash obligations of both principal and interest as part of the property division.

■■■ We are not satisfied that the trial court erred in concluding that appellant has the ability to pay $12,000 a year for maintenance. Appellant's contention that the trial court must anticipate a reduction of appellant's income to the extent of the cash part of the property division is without support. The nature of the property settlement rightfully demands that appellant sell property or borrow money so the division can occur; the division is not to be paid out of his income. The record does not reflect evidence sufficient to conclude that appellant, who makes $83,500 per year, has no ability to pay $12,000 per year for maintenance.

■■■ The trial court determined the appellant's gross salary is $83,500, and appellant claims this is an overstatement of his income. Appellant argues that the trial court erred in including in his salary lease payments of $32,000 which Midwest Asphalt pays him for the company's leases on several properties appellant owns. Appellant says the lease payments flow through him directly to the mortgagee for the property, so that he cannot retain the money for his personal use. This contention is of little significance. Of course appellant's mortgage payments affect his present ability to pay his expenses, but this does not make his income less than noted by the trial court. The record does not show appellant cannot pay maintenance ordered by the trial court.

■■■ Appellant also challenges the trial court finding that respondent is unemployable and that her property division award will not produce sufficient income to meet her reasonable needs. Appellant measures respondent's resources in terms of both income and property available to her. The trial court is to look at respondent's income, including income from marital property, not at the property division itself, in assessing her need for maintenance. She should not be required to place herself at risk by liquidating her assets to meet her expenses. *See Zagar v. Zagar,* 396 N.W.2d 98, 101 (Minn.Ct.App.1986) ("We find no authority to support appellant's suggestion that an award be preserved based on an expectation that the obligor liquidate assets to make payments."). We find no clear error in the trial court's finding that respondent's income will not be sufficient to meet her needs.

### IV.

■■■ An award of attorney fees should not be disturbed absent a clear abuse of discretion. *Solon v. Solon,* 255 N.W.2d 395, 397 (Minn.1977). *See also Nardini v. Nardini,* 414 N.W.2d 184, 198 (Minn.1987) (maintenance analysis confined to topic of spouse's potential annual income from investments and employment). We will uphold the award if the record demonstrates respondent's need for financial assistance to enable her to protect her rights in the dissolution proceeding. Minn.Stat. § 518.14; *see Frederiksen v. Frederiksen,* 368 N.W.2d 769 (Minn.Ct.App.1985). Only where there is a disparity in incomes or in property awarded is payment of attorney fees appropriate. *Witeli v. Witeli,* 392 N.W.2d 756, 758 (Minn.Ct.App.1986).

■■■ The trial court awarded $28,625 to respondent for attorney fees "in view of the parties' relative financial resources, the nature of the assets hereinafter awarded to

each, and especially considering the parties' relative earning capacities." This amount is exactly one-half of what the trial court determined to be the total reasonable value of the attorney services for respondent. The trial court determined that appellant had significantly greater resources. Its award of fees was not a clear abuse of discretion.

## DECISION

The trial court did not err in valuing and dividing the parties' property. In light of the great disparity between appellant's salary and respondent's income the court did not err in awarding maintenance to respondent. For the same reason we affirm the award of attorney fees.

Affirmed.